2012 COA 115

**Adam Robert VANDERPOOL, Plaintiff–Appellant,**

v.

**Jeremy Rhys LOFTNESS, Defendant–Appellee.**

**No. 11CA1251.**

Colorado Court of Appeals, Div. I.

July 5, 2012.

As Modified on Denial of Rehearing Aug. 30, 2012.

§ 24–51–1105, C.R.S.2011.

Sixta & Associates, P.C., Terry W. Vanderpool, Friendswood, Texas; Blattner Law Firm, LLC, Lisa Theresa Carotenuto Blattner, Colorado Springs, Colorado, for Plaintiff–Appellant.

Hillyard, Wahlberg, Kudla & Sloane, LLP, Stephen W. Wahlberg, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

¶ 1 Plaintiff, Adam Robert Vanderpool, appeals the district court's judgment on jury verdicts in favor of defendant, Jeremy Rhys Loftness, on Mr. Vanderpool's negligence and battery claims. We affirm.

## I. Background

¶ 2 Mr. Vanderpool and Mr. Loftness, both students at Colorado State University, had a physical altercation near campus after attending a party. Mr. Loftness hit Mr. Vanderpool, and claimed self-defense.

¶ 3 The Larimer County District Attorney charged Mr. Loftness with second degree assault. On September 8, 2009, Mr. Loftness pled guilty to added charges of attempted second degree assault, a felony, and third degree assault, a misdemeanor. His plea to the attempted second degree assault charge was subject to a stipulation for a deferred judgment. If he successfully fulfilled the conditions of that deferred judgment, in two years the guilty plea would be deemed withdrawn and the charge would be dismissed

with prejudice. *See* § 18–1.3–102, C.R.S. 2011. His plea to the third degree assault charge, however, was not conditional.

¶ 4 Mr. Vanderpool filed this civil case against Mr. Loftness on August 19, 2009, asserting claims for negligence, assault, battery, and outrageous conduct. The case was tried to a jury over five days from March 11 to 17, 2011. Only two claims—negligence and battery—were submitted to the jury. The jury found in Mr. Loftness's favor on both claims.

¶ 5 Mr. Vanderpool appeals.

## II. Discussion

¶ 6 Mr. Vanderpool contends that the district court erred by: (1) denying his motion for a directed verdict on the battery claim; (2) allowing one of Mr. Loftness's medical expert witnesses to testify; (3) improperly instructing the jury on the elements of the battery claim; and (4) denying his motion for judgment notwithstanding the verdict on the battery claim. He also contends that the jury's verdict on the battery claim was clearly erroneous. We address and reject each of these contentions in turn.

### A. Directed Verdict—Issue Preclusion

¶ 7 On the second day of trial, toward the end of Mr. Loftness's testimony, Mr. Vanderpool's attorney moved for a directed verdict on the battery claim based on the fact that Mr. Loftness had pled guilty to attempted second degree assault and third degree assault in the criminal case.[1] Counsel argued that the doctrine of issue preclusion barred Mr. Loftness from denying that he had committed battery on Mr. Vanderpool and from claiming self-defense. The court deferred ruling on the motion until Mr. Vanderpool had rested his case.

¶ 8 The court ultimately denied the motion, for several reasons. First, the court determined that the elements of the attempted second degree assault charge did not match those of the battery claim (primarily because

---

1. Mr. Vanderpool's motion was premature. He had not yet presented all of his evidence, and Mr. Loftness had not yet had the opportunity to put on a case. *See* C.R.C.P. 50 ("A party may move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence.").

that charge was for an attempted, rather than a completed, assault). Second, the court ruled that a deferred judgment is not a final judgment for issue preclusion purposes. Third, the court determined that Mr. Loftness had little incentive to contest the charges once the favorable terms of the pleas were conveyed. And fourth, the court ruled that Mr. Vanderpool had waived the right to assert issue preclusion because he had not raised it until the second day of trial.[2]

¶9 Though Mr. Vanderpool challenges each of the reasons given by the district court, we conclude that one of those reasons—waiver—is dispositive.

### 1. Issue Preclusion and Waiver

¶10 The doctrine of issue preclusion, often referred to as collateral estoppel, bars relitigation of issues necessary to the outcome of a prior action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973); *see McLane Western, Inc. v. Dep't of Revenue*, 199 P.3d 752, 756–57 (Colo. App.2008).[3]

¶11 Issue preclusion "is designed to 'relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions.'" *Reynolds v. Cotten*, 2012 CO 27, ¶9, 274 P.3d 540 (quoting in part *In re Tonko*, 154 P.3d 397, 405 (Colo.2007)); *see Parklane Hosiery*, 439 U.S. at 326, 99 S.Ct. 645 ("Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."). It may be invoked defensively or offensively. Issue preclusion is invoked defensively when a defendant seeks to apply it to bar a plaintiff from attempting to prove an issue that the plaintiff previously litigated and lost against the defendant or another party. It is invoked offensively when a plaintiff seeks to apply it to bar a defendant from relitigating an issue that the plaintiff must prove and which the defendant previously litigated unsuccessfully against the plaintiff or another party. *See Parklane Hosiery*, 439 U.S. at 326 n. 4, 99 S.Ct. 645.

¶12 This case involves offensive issue preclusion. And because Mr. Vanderpool was not a party to the criminal case, this case involves "nonmutual" offensive issue preclusion. *See id.* at 326–28, 99 S.Ct. 645; *Central Bank Denver v. Mehaffy, Rider, Windholz & Wilson*, 940 P.2d 1097, 1102 (Colo. App.1997).

¶13 In any case in which issue preclusion is invoked, the proponent of the doctrine must show that

(1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full

---

2. Mr. Vanderpool argues that Mr. Loftness's counsel did not argue and the district court did not rule that he had waived issue preclusion. But, contrary to Mr. Vanderpool's assertion, Mr. Loftness's counsel specifically argued that it was too late to assert issue preclusion and that counsel had acted inconsistently with its assertion in pretrial proceedings and during trial. *See* March 14, 2011, Transcript at 5–6. In ruling on the motion for directed verdict, the court discussed cases relating to waiver of issue preclusion, said the reasons for requiring a defendant to plead issue preclusion apply equally to a plaintiff seeking to use issue preclusion offensively, noted that Mr. Vanderpool had unnecessarily delayed in asserting issue preclusion (to Mr. Loftness's prejudice), and then said, "Therefore, the Court finds that the Plaintiff has raised his right to assert the

issue and the motion for directed verdict is denied." *See* March 16, 2011, Transcript at 36–38. We are persuaded that, given the context, either that the transcript's inclusion of the word "raised" is a transcription error, and that the court said "waived," or that the court intended to say "waived" but misspoke. Using the word "raised" in this context does not make sense. Using the word "waived" does.

3. Under the doctrine of claim preclusion, often referred to as res judicata, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery*, 439 U.S. at 326 n. 5, 99 S.Ct. 645; *see Pomeroy*, 183 Colo. at 349–50, 517 P.2d at 399.

and fair opportunity to litigate the issue in the prior proceeding.

*Reynolds,* 2012 CO 27, ¶ 9, 274 P.3d 540; *accord Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo.2001); *Allen v. Martin,* 203 P.3d 546, 560 (Colo.App.2008); *see also Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 85 (Colo.1999) (the party asserting issue preclusion has the burden of establishing each element); *Allen,* 203 P.3d at 560 (same).

■ ¶ 14 When the applicability of nonmutual offensive issue preclusion is in question, other considerations come into play. In *Parklane Hosiery,* the Court recognized that application of nonmutual offensive issue preclusion "does not promote judicial economy in the same manner as defensive use does," and presents a unique potential for unfairness toward the party sought to be estopped. *Parklane Hosiery,* 439 U.S. at 329–31, 99 S.Ct. 645. Thus, a court deciding whether to apply nonmutual offensive issue preclusion must consider, in addition to the four foundational requirements noted above, whether the party seeking to assert preclusion could have joined the first action, but instead took a "wait and see" approach; the extent to which the party sought to be estopped had incentive to litigate vigorously the prior case; whether the decision sought to be relied on is inconsistent with another decision involving the party sought to be estopped; and whether the second case affords the party sought to be estopped procedural protections that were unavailable in the first case. *Id.; see also Bassett v. State Bd. of Dental Examiners,* 727 P.2d 864, 866 (Colo.App.1986).

■ ¶ 15 A party entitled to assert issue preclusion may waive it. *Harvey v. United Transp. Union,* 878 F.2d 1235, 1243 (10th Cir.1989) (offensive issue preclusion); *North Pacifica, LLC v. City of Pacifica,* 366 F.Supp.2d 927, 929–30 (N.D.Cal.2005) (defensive issue preclusion); *Fischer v. City of Sioux City,* 654 N.W.2d 544, 548–49 (Iowa 2002) (offensive issue preclusion); *see generally* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4405, at 83–84 (2d ed. 2002). With respect to defensive issue preclusion, this is recognized by C.R.C.P. 8(c),

which lists res judicata and estoppel among those affirmative defenses that must be raised in a responsive pleading. *See Taylor v. Sturgell,* 553 U.S. 880, 907, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (applying Fed. R.Civ.P. 8(c)); *Blonder–Tongue Laboratories, Inc. v. Univ. of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (same); *see also Vincent v. Clean Water Action Project,* 939 P.2d 469, 472 (Colo. App.1997) (res judicata is waived if not appropriately raised); *Davignon v. Clemmey,* 322 F.3d 1, 15 (1st Cir.2003) (defensive issue preclusion is subject to Fed.R.Civ.P. 8(c)); *see generally* 18 *Federal Practice and Procedure* § 4405, at 93.

■ ¶ 16 Offensive issue preclusion is not an affirmative defense. Nonetheless, "it is difficult to understand why plaintiffs should not be required to plead preclusion as clearly as defendants—the need for notice and an opportunity to respond seems the same." 18 *Federal Practice and Procedure* § 4405, at 109. Therefore, courts have held that a party waives offensive issue preclusion unless he raises it timely. *See, e.g., Harvey,* 878 F.2d at 1243–44 (the plaintiffs waived issue preclusion where they raised it after trial but before the trial court issued its decision); *Fischer,* 654 N.W.2d at 546, 548–49 (issue preclusion waived where the plaintiff did not raise it until two months before trial); *Julien v. City of Sherman,* 1997 WL 714870, *1, 3 (Tex.App. No. 05–96–00013–CV, Nov. 18, 1997) (having litigated the previously decided issue, the plaintiff waived issue preclusion). Because the function of issue preclusion is to avoid relitigation of an issue, this ordinarily means that a party seeking to use issue preclusion offensively must raise it at the first reasonable opportunity after the decision having preclusive effect has been rendered. *See Evans v. Syracuse City School Dist.,* 704 F.2d 44, 47 (2d Cir.1983); *Fischer,* 654 N.W.2d at 548; *see also Gilbert v. Ferry,* 413 F.3d 578, 580 (6th Cir.2005) (if the parties relitigate the previously decided issue, "then the party who failed to raise collateral estoppel should be deemed to have waived it since the purpose served by collateral estoppel (to prevent re-litigation of issues) has been fatally compromised"; involving defen-

sive issue preclusion); *see generally* 18 James Wm. Moore, *Moore's Federal Practice* § 132.05[3], at 132–181 (3d ed. 2011).

## 2. Standard of Review

¶ 17 The applicability of issue preclusion is typically characterized as an issue of law. *See Reynolds,* 2012 CO 27, ¶ 11, 274 P.3d 540 (the availability of issue preclusion "has also been characterized as a mixed question of fact and law in which legal issues predominate"); *Stanton v. Schultz,* 222 P.3d 303, 307 (Colo.2010) ("Issue preclusion is a question of law ...."); *see also Baros v. Texas Mexican Ry. Co.,* 400 F.3d 228, 232 (5th Cir.2005); *Nat'l Union Fire Ins. Co. v. Terra Industries, Inc.,* 346 F.3d 1160, 1164 (8th Cir.2003); *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I.1996); *cf. Yeager v. Carpenter,* 2010 WL 3081441, *9 (Ohio Ct. App.2010) (the applicability of claim preclusion is an issue of law for the court, not the jury, to decide). This is certainly the case with respect to review of the four foundational elements which must be established for any assertion of issue preclusion. Thus, where the case concerns defensive issue preclusion, as to which only those four elements are typically relevant, we review a district court's resolution of the issue de novo. *See Stanton,* 222 P.3d at 307; *Bristol Bay Productions, LLC v. Lampack,* —— P.3d ——, ——, 2011 WL 5865902 (Colo.App.2011); *see also Baros,* 400 F.3d at 232; *Nat'l Union Fire Ins.,* 346 F.3d at 1164. Likewise, when the case concerns offensive issue preclusion, whether mutual or nonmutual, we review a district court's assessment of the four foundational elements de novo. *See Modiri v. 1342 Restaurant Group, Inc.,* 904 A.2d 391, 394 (D.C.2006); *Cities Service Co. v. Gulf Oil Corp.,* 980 P.2d 116, 124 (Okla.1999).

¶ 18 However, because of the unique concerns implicated by the use of nonmutual offensive issue preclusion, district courts have "broad discretion" to determine whether nonmutual offensive issue preclusion should be applied. *Parklane Hosiery,* 439 U.S. at 329–31, 99 S.Ct. 645; *see also Central Bank Denver,* 940 P.2d at 1103 (application of nonmutual offensive issue preclusion is "discretionary with the trial court"). There-

fore, we review a district court's ultimate decision whether to apply offensive issue preclusion for an abuse of discretion. *See Modiri,* 904 A.2d at 394–94; *Cities Service Co.,* 980 P.2d at 124; *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 248–49 (3d Cir.2006); *Harrell v. United States Postal Service,* 445 F.3d 913, 921 (7th Cir.2006); *Baros,* 400 F.3d at 232; *Roberts v. Recovery Bureau, Inc.,* 316 S.C. 492, 450 S.E.2d 616, 619–20 (App.1994); *Goldstein v. Comm'n for Lawyer Discipline,* 109 S.W.3d 810, 813 (Tex.App.2003).

¶ 19 Deciding whether a party has waived the right to assert issue preclusion requires consideration of the circumstances of the prior and present cases, as well as the extent to which the timing of a party's assertion of the doctrine may be unfair to the party sought to be estopped. This sort of assessment is one best left to the district court's discretion. *Cf. Public Service Co. v. Blue River Irrigation Co.,* 753 P.2d 737, 740–41 (Colo.1988) (treating issue of whether one party waived right to object to another party's participation in the case as reviewable for an abuse of discretion); *Lincoln First Bank v. Dist. Ct.,* 628 P.2d 615, 616–17 (Colo. 1981) (treating issue of whether bank waived its statutory right to a particular venue as reviewable for an abuse of discretion). Therefore, we review the district court's determination of waiver of issue preclusion for an abuse of discretion. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous application of the law. *Carruthers v. Carrier Access Corp.,* 251 P.3d 1199, 1210 (Colo.App.2010).

## 3. Application

¶ 20 Though at all times aware of Mr. Loftness's guilty pleas, Mr. Vanderpool's counsel did not assert issue preclusion until the second day of trial, eighteen months after counsel filed the complaint and seventeen months after Mr. Loftness entered his guilty pleas. Counsel persistently sought to litigate the issue of Mr. Loftness's liability, objecting strenuously to Mr. Loftness's counsel's pretrial efforts to exclude evidence of the guilty pleas. Had Mr. Vanderpool's counsel suc-

cessfully asserted issue preclusion, presenting that evidence at trial would have been unnecessary. Mr. Vanderpool's counsel filed numerous discovery and pretrial motions, briefs, and other papers, never once asserting that Mr. Loftness should be precluded from contesting his liability for battery. Nor did counsel so assert in Mr. Vanderpool's proposed trial management order, a document which is intended, in part, to identify the issues to be tried and the evidence to be presented. *See* C.R.C.P. 16(f)(3), (5). And, at trial, Mr. Vanderpool's counsel presented testimony and exhibits intended to establish both that Mr. Loftness committed battery and that Mr. Loftness did not act in self-defense. Again, presenting that testimony and evidence would have been unnecessary had Mr. Vanderpool's counsel timely and successfully asserted issue preclusion.

¶ 21 Under these circumstances, we conclude that the district court did not abuse its discretion by ruling that Mr. Vanderpool had waived issue preclusion. Indeed, the circumstances establishing waiver here are so clear cut that a contrary ruling would have been an abuse of discretion. *Cf. Davignon*, 322 F.3d at 15 (the district court abused its discretion in allowing the defendant to raise the defense of res judicata on the eighth day of a nine-day trial); *Harvey*, 878 F.2d at 1243–44 (the plaintiffs waived offensive issue preclusion by failing to raise it until after trial, though before judgment; the plaintiffs' trial conduct demonstrated a willingness to try the issue); *Evans*, 704 F.2d at 46–47 (the defendant waived the defense of res judicata by waiting until six days before trial to raise it); *North Pacifica*, 366 F.Supp.2d at 927–29 (the defendant waived issue preclusion defense to liability where it did not raise the defense until after the liability phase of the trial); *Fischer*, 654 N.W.2d at 546, 548–49 (the trial court abused its discretion by granting the plaintiff's motion to apply offensive issue preclusion, which was filed two months before trial; assertion of issue preclusion was untimely and therefore waived); *Mayers v. D'Agostino*, 58 N.Y.2d 696, 458 N.Y.S.2d 904, 444 N.E.2d 1323, 1323 (1982) (the trial court did not abuse its discretion by denying the defendants' attempt to amend their answer during trial to assert issue pre-

clusion); *Julien*, 1997 WL 714870, *2–3 (the trial court did not err in finding that the defendant's position was not barred by issue preclusion where the plaintiff litigated the issue at trial).

¶ 22 We are not persuaded to the contrary by Mr. Vanderpool's argument that he was required to present evidence of Mr. Loftness's liability for battery at trial to establish his entitlement to assert issue preclusion. As noted, the question whether issue preclusion applies is one for the court to decide: no legitimate purpose is served by exposing a jury to the evidence supporting preclusion. And the preclusion claim should be raised as early as possible so as to avoid undermining the purposes of the issue preclusion doctrine. Thus, whatever evidence a party has supporting a claim of issue preclusion should be presented with a timely motion or at a hearing thereon. *See, e.g.,* C.R.C.P. 56(a) (claimant may move for summary judgment on part of a claim), (h) (party may move for a determination of a question of law).

¶ 23 Nor are we persuaded by Mr. Vanderpool's contention that he raised issue preclusion before trial. It is true that, in opposing Mr. Loftness's motion in limine to exclude evidence of the guilty pleas, Mr. Vanderpool's counsel noted that a guilty plea "may preclude a defendant from contesting liability in a later civil trial." But it is also true that Mr. Vanderpool's counsel did not ask the court to apply issue preclusion, and in fact argued that he be allowed to present evidence at trial to prove Mr. Loftness's liability for battery. Put simply, merely acknowledging the existence of a particular legal principle is not the same as asking a court to make a ruling applying it.

¶ 24 Having concluded that Mr. Vanderpool waived issue preclusion, we need not address his challenges to the other bases for the district court's decision not to apply it.

## B. Expert Testimony

¶ 25 Next, Mr. Vanderpool contends that the district court erred by not ruling on his motion to compel production of documents from one of Mr. Loftness's expert witnesses,

Dr. Joseph Ramos, or on his motion to prohibit Dr. Ramos from testifying. He argues that the court should not have allowed Dr. Ramos to testify because Dr. Ramos did not timely produce his report as required by C.R.C.P. 26 and earlier court orders.[4]

¶ 26 Mr. Vanderpool did not preserve this issue for appellate review. Though he filed motions, the record does not show that he ever requested rulings on them, before or during trial. At the pretrial conference, the motion to compel was discussed, but the court deferred ruling, indicating that it would rule on the pending motions before trial. (At the pretrial conference, Mr. Vanderpool's counsel did not mention the motion to prohibit Dr. Ramos from testifying, filed that day, but did say that it would be unfair to allow Dr. Ramos to testify because he had not yet produced his expert report.)

¶ 27 We do not know if this issue was taken up the morning of the first day of the trial because Mr. Vanderpool chose not to have that portion of the trial proceedings transcribed. *See Clayton v. Snow,* 131 P.3d 1202, 1204 (Colo.App.2006) (where counsel does not provide a transcript of the relevant proceedings, the appellate court must assume that the record would support the district court's ruling). But we do know from the record that when Mr. Loftness's counsel called Dr. Ramos to testify, Mr. Vanderpool's counsel did not request rulings on the motions or otherwise object because Dr. Ramos had not timely produced his report. And when Mr. Loftness's counsel moved to have Dr. Ramos deemed qualified to testify as a medical expert, Mr. Vanderpool's counsel said, "We're certainly prepared to let him testify." Thereafter, though Mr. Vanderpool's counsel made occasional objections to Dr. Ramos's testimony (a couple of which were that Dr. Ramos had not disclosed particular testimony in his report), he never objected that Dr. Ramos's testimony should

be disallowed, in whole or in part, because of any failure to timely submit a report. Indeed, Dr. Ramos gave several opinions to which Mr. Vanderpool's counsel did not object at all, including some that Mr. Vanderpool's counsel elicited on cross-examination.[5]

¶ 28 We conclude that Mr. Vanderpool abandoned any objection to Dr. Ramos testifying based on a failure to timely produce his report, and therefore waived the issue for appellate review. *See Kreft v. Adolph Coors Co.,* 170 P.3d 854, 858–59 (Colo.App.2007) (the plaintiffs waived the argument that they should have been allowed to amend their complaint because they failed to request a ruling on their motion to amend); *Littlefield v. Bamberger,* 32 P.3d 615, 620 (Colo.App. 2001) (presenting an argument in the district court but failing to request a ruling on it waives the issue); *People v. Young,* 923 P.2d 145, 149 (Colo.App.1995) (the defendant waived the issue of ineffective assistance of counsel by failing to request a ruling on his motion); *Weil v. Allied Van Lines, Inc.,* 481 P.2d 124, 125 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)) (where party sought to introduce an exhibit at trial, but, after opposing counsel objected, court did not rule and party seeking admission did not request a ruling, party who sought admission of exhibit waived the issue for appeal); *Kenney v. Jefferson County Bank,* 12 Colo.App. 24, 29–30, 54 P. 404, 406 (1898) (where counsel objected to admissibility of testimony and court reserved ruling, but counsel did not thereafter request a ruling and court did not rule on objection, issue was not preserved for appeal).

¶ 29 Mr. Vanderpool's contention fares no better even if we assume that it was preserved.

¶ 30 The record shows that Dr. Ramos was not able to complete his examination of Mr. Vanderpool, largely because of the conduct of

---

4. Dr. Ramos produced his report two days before trial.

5. On page 27 of the Opening Brief, Mr. Vanderpool's counsel claims that Mr. Vanderpool was prejudiced by Dr. Ramos's opinions on two particular matters. But the record shows that Mr. Vanderpool's trial counsel elicited those opinions on cross-examination, and did not object in ei-

ther instance. *See Connelly v. Kortz,* 689 P.2d 728, 730 (Colo.App.1984) (where counsel did not move to strike expert's testimony that same counsel had inadvertently elicited on cross-examination, issue was not preserved for appeal). It is disturbing that Mr. Vanderpool's counsel failed to point that out.

Mr. Vanderpool and his representatives. Less than one month before trial, at a hearing on February 16, 2011 (the transcript of which Mr. Vanderpool has not provided), the court heard argument concerning Mr. Vanderpool's alleged failure to cooperate in completing the examination. The court ordered him to appear at Dr. Ramos's office to have the examination completed. He did not appear at the agreed time on February 23. He later claimed that he had been misled by someone in Dr. Ramos's office as to where to go (a claim denied by Dr. Ramos's staff), despite the fact that Mr. Loftness's counsel had provided Mr. Vanderpool's counsel with the correct address and Mr. Vanderpool had been to that office at least two times previously. Because Dr. Ramos was not obligated to provide a report until the examination had been completed, the record does not support Mr. Vanderpool's contention that Dr. Ramos (or Mr. Loftness's counsel) failed to comply with C.R.C.P. 26 or any court order.[6]

■ ¶ 31 In any event, any error in allowing Dr. Ramos to testify was harmless. Dr. Ramos testified only as to Mr. Vanderpool's alleged damages—specifically, the extent of Mr. Vanderpool's physical injuries. He did not testify on whether Mr. Loftness committed battery or whether Mr. Loftness acted in self-defense. The jury found in Mr. Loftness's favor on the issues of liability on both claims, and though it found that Mr. Vanderpool had suffered injuries, damages, or losses, it also found that Mr. Loftness did not cause any of those injuries, damages, or losses. Thus, Dr. Ramos's testimony could not have had any effect on the verdicts. *See Dunlap v. Long,* 902 P.2d 446, 448 (Colo.App. 1995) ("[A] jury determination that a defendant is not liable renders harmless any error that might have occurred with respect to the issue of the plaintiff's alleged damages.") (citing *Panion v. Crichton,* 144 Colo. 170, 355 P.2d 938 (1960), and *Gray v. Houlton,* 671 P.2d 443 (Colo.App.1983)); *Suson v. Sanborn,* 484 P.2d 807, 809–10 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)).

### C. Battery Instruction

¶ 32 Mr. Vanderpool contends that the district court erred in instructing the jury on the elements of battery. Specifically, he argues that the instruction told the jury that it had to find "harmful" physical contact, but should have told the jury that it had to find "harmful or offensive" physical contact. We decline to address the merits of this contention.

■ ¶ 33 Mr. Vanderpool's counsel tendered an elemental instruction on battery that was substantially identical to the one the court ultimately gave the jury, and expressly stipulated to the court's instruction. Thus, any error was invited by Mr. Vanderpool, and he cannot complain of it on appeal. *See Day v. Johnson,* 255 P.3d 1064, 1067–68 (Colo.2011); *First Nat'l Bank v. Navins,* 70 Colo. 491, 493–94, 202 P. 702, 703 (1921); *Denver & Rio Grande R.R. Co. v. Peterson,* 30 Colo. 77, 87, 69 P. 578, 581 (1902); *see also Gorsich v. Double B Trading Co., Inc.,* 893 P.2d 1357, 1363 (Colo.App.1994) (the defendants were barred by invited error from challenging instruction where they had tendered an almost identical instruction).

■ ¶ 34 Further, Mr. Vanderpool waived this claim of error because his counsel did not object to the instruction. *See* C.R.C.P. 51 (only the grounds specified in an objection to an instruction may be considered on appeal); *Itin v. Ungar,* 17 P.3d 129, 135 (Colo.2000); *Palmer v. Diaz,* 214 P.3d 546, 551 (Colo.App.2009). Though we may review a claimed instructional error for plain error where there was merely a failure to object, such review is limited to unusual or special cases where correcting the error is necessary to avert unequivocal and manifest injustice. *Harris Group, Inc. v. Robinson,* 209 P.3d 1188, 1195 (Colo.App.2009). This is not such a case.

■ ¶ 35 We are not persuaded that the error claimed here is reviewable merely because, as Mr. Vanderpool points out, the

---

6. On January 24, 2011, the special master ordered Dr. Ramos to make all disclosures required by C.R.C.P. 26(a)(2)(B)(I) within ten days of producing his report. As noted, the record shows that Mr. Vanderpool and his representatives were largely (perhaps entirely) at fault for any delay in preparing the report.

district court has a general obligation to correctly instruct the jury on the law. This obligation does not transform the court into an advocate for either party, nor does it relieve parties of the obligation to bring objections to the court's attention to preserve matters for appellate review. *See Feliciano v. School Bd. of Palm Beach Cnty.*, 776 So.2d 306, 308 (Fla.Dist.Ct.App.2000) ("the policies behind the requirement ... that objections to jury instructions be properly preserved[ ] override the necessity that a jury be correctly charged on the law"); *Narkin v. City of Springfield*, 5 Mass.App.Ct. 489, 364 N.E.2d 1074, 1075–76 (1977) (though the district court has an obligation to instruct the jury correctly on the applicable law, the objecting party also has an obligation to identify the instructional error for the court, and his failure to do so waives his right to raise that error on appeal); *see also Bijou Irrigation Dist. v. Cateran Land & Live Stock Co.*, 73 Colo. 93, 98, 213 P. 999, 1001 (1923) (though the district court may have a duty to instruct the jury correctly sua sponte, the existence of that duty does not mean that an instruction given without objection is a ground for a new trial); *cf. In re Conservatorship & Estate of George H.*, 169 Cal.App.4th 157, 86 Cal.Rptr.3d 666, 670–71 (2008) (in a civil case, the district court has no duty to instruct the jury correctly on the applicable law on its own motion). A contrary rule would render the invited error doctrine and C.R.C.P. 51 nullities in the instructional error context.

### D. Validity of the Jury's Verdict on the Battery Claim

¶ 36 Mr. Vanderpool contends that the district court erred by denying his motion for judgment notwithstanding the verdict on the battery claim because "[t]he evidence conclusively established the elements of battery." He similarly contends that the jury's verdict on that claim was clearly erroneous because the evidence overwhelmingly proved "offensive" physical contact. These contentions, however, are premised on the correctness of his arguments that Mr. Loftness's guilty pleas barred him from contesting liability on the battery claim and that the elemental jury instruction for the battery claim was incomplete. Having rejected these arguments, we likewise reject his contentions based on the quantum and quality of the evidence of battery.

¶ 37 The judgment is affirmed.

Judge TAUBMAN and Judge RUSSEL concur.