24CA0638 Matter of Carol A Casal Trust 08-21-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0638
La Plata County District Court No. 21PR30167
Honorable A. Nathaniel Baca, Judge

In the Matter of Carol A. Casal Trust.

Dennis Casto,

Appellant,

v.

Deann Lantry and Denise Hackman,

Appellees.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

Evans Case LLP, Amy E. Arlander, Timothy D. Bounds, Denver, Colorado, for Appellant

Coan, Payton & Payne, LLC, John M. Seebohm, Denver, Colorado; M. Lynne Bruzzese, Durango, Colorado, for Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1   Carol A. Casal — the mother of petitioners, Denise Hackman and Deann Lantry (jointly, the sisters), and respondent, Dennis Casto — established the Carol A. Casal Trust (the trust). Casal served as the initial trustee and designated her three children as equal beneficiaries. Casto succeeded Casal as trustee. Casto appeals the district court's entry of judgment in the sisters' favor on their claims arising from his administration of the trust. We affirm.

## I.   Background

¶ 2   Casal established the trust in California in October 2007. In 2016, Casto petitioned a California probate court to appoint him conservator of Casal and her estate. Shortly after his appointment as conservator of her estate, Casto began paying himself from trust funds, opened bank accounts in his name, both in an individual capacity and as conservator, and shifted money between the trust's accounts and those of another family trust to which he had access as conservator.

¶ 3   Casto relocated Casal to his home state of Colorado while acting as conservator, citing her declining health. She died in January 2019.

¶ 4    As required under California law, Casto provided the California court with two accountings documenting his financial dealings as conservator of Casal's estate.  After Casto responded to questions from a California probate examiner, the California court approved the accountings.

¶ 5    In October 2019 — approximately nine months after Casal's death — the sisters sued Casto in California for breach of trust, an order compelling him to provide an accurate accounting of the trust's finances, and an order removing him as trustee.  During that litigation, Casto sent the sisters a 500-page compilation, which contained statements for the trust's bank accounts, among other financial documents.  The compilation also included a summary of the trust's finances (the summary) from March 2017 (when Casto was appointed conservator of Casal's estate) through April 2019 (several months after Casal's death).  The sisters questioned the summary's completeness.  Casto later sent them another 500-page compilation of financial documents, some of which pertained to the time period covered in the summary, and some of which provided updated account information available after April 2019.

¶ 6     In November 2020, Casto moved to dismiss the California case, arguing that the California court lacked jurisdiction over the action because he had registered the trust in Colorado earlier that year and had been administering it from that state. *See* Cal. Civ. Proc. Code § 418.10(a) (West 2024) (providing that, as relevant here, a defendant may move to dismiss a civil action on jurisdictional or inconvenient forum grounds). The California court dismissed the sisters' complaint because "Casto has not subjected himself or the trust to the jurisdiction of the court" and California was an "inconvenient forum."

¶ 7     In October 2021, the sisters filed a new action against Casto in Colorado. They alleged in their new case that Casto (1) failed to provide them with the legally required notice of changes to the trust's status upon Casal's death; (2) breached his duty to account to them, as trust beneficiaries; (3) breached his fiduciary duty to administer the trust in good faith and in the beneficiaries' interests; and (4) committed civil theft. They asked the Colorado court to order Casto to provide a "full and complete accounting," to remove Casto as trustee, to appoint a fiduciary, and to award damages.

Casto denied the allegations, and the case proceeded to a bench trial.

¶ 8    At trial, the sisters argued that Casto defrauded them through "a multitude of relatively modest dishonest transactions which [added] up to a substantial amount." They asserted that Casto concealed his actions by providing incomplete, unorganized, and incomprehensible financial records for his many transactions in the trust's name, including transfers of funds among several bank accounts, while serving as conservator and trustee. To support their arguments, the sisters presented the testimony of a forensic accountant and fraud examiner, Pamela Kerr, who reconstructed Casto's extensive financial dealings.

¶ 9    Kerr testified that the summary was "so inaccurate it cannot be relied upon" and noted errors in his trust accounting, missing documents, a multitude of "fund transfers back and forth," an unreported transfer of title to Casal's car to Casto and his wife, and other misrepresentations in Casto's documents. At trial, the sisters requested an award of $115,000 in damages for breach of trust, damages for civil theft in the amount of $65,000 (to be trebled under the civil theft statute), reimbursement for Kerr's expert

4

witness fees, an award of attorney fees and other costs, and prejudgment interest.

¶ 10    In response, Casto called his own forensic accounting expert, Marcia McMinimee, who testified that Casto's errors and commingling of accounts were not "that problematic" considering his status as a "layperson" rather than as a professional fiduciary.

¶ 11    Following the trial, the Colorado court issued a written order in which it found Casto liable on all the sisters' claims, awarded the sisters the damages and fees they requested, removed Casto as trustee, and appointed a special fiduciary to serve in his place. After receiving the sisters' bill of costs, the Colorado court issued a final judgment reducing all damages, attorney and expert witness fees, and prejudgment interest to a sum certain.

¶ 12    Casto raises four issues on appeal. He contends that (1) the Colorado court erred by failing to apply issue preclusion to bar relitigation of claims decided in the California conservatorship proceedings; (2) the Colorado court erroneously conflated the conservatorship accounting with the trust accounting and thereby failed to properly apply the provision in the trust instrument limiting the trustee's liability; (3) the evidence did not support a

finding of civil theft; and (4) the Colorado court erred by awarding the sisters attorney fees and expert witness fees from 2019 onward, even though they did not file the Colorado action until 2021.

## II.    Issue Preclusion

¶ 13    We initially consider whether Casto preserved his issue preclusion affirmative defense.  We agree with the sisters that he failed to do so.

¶ 14    "It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."  *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18, 287 P.3d 842, 847.  While talismanic language is not required to preserve an argument for appeal, a party must have presented "the sum and substance" of the argument to the district court. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50, 532 P.3d 776, 788 (quoting *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010)).

¶ 15    The issue preclusion doctrine is intended to conserve the court's and the parties' resources by avoiding duplicative litigation on an issue that was resolved in a prior action.  *See Vanderpool v. Loftness*, 2012 COA 115, ¶ 11, 300 P.3d 953, 957.  In *Vanderpool,*

the plaintiff attempted to assert issue preclusion for the first time at trial. *Id.* at ¶ 7, 300 P.3d at 956. The district court denied the plaintiff's assertion of the doctrine based on, among other things, his failure to raise it earlier. *Id.* at ¶ 8, 300 P.3d at 957. A division of this court affirmed. *Id.* at ¶ 21, 300 P.3d at 960. Underlying its reasoning were the plaintiff's (1) knowledge of the relevant facts throughout the litigation; (2) persistent litigation on the merits; (3) filing of "numerous discovery and pretrial motions, briefs, and other papers" that made no reference to issue preclusion; and (4) failure to assert the doctrine in the "proposed trial management order, a document which is intended, in part, to identify the issues to be tried and the evidence to be presented." *Id.* at ¶ 20, 300 P.3d at 959-60; *see also* C.R.C.P. 16(f)(3), (5). *But see Mid-Century Ins. Co. v. HIVE Constr., Inc.*, 2023 COA 25, ¶ 23, 531 P.3d 427, 432 (holding that failure to list an economic loss rule defense in a trial management order does not waive the defense when the party asserted it in its answer and in a motion for directed verdict), *aff'd*, 2025 CO 17, 567 P.3d 153.

¶ 16 Thus, *Vanderpool* instructs litigants to raise issue preclusion arguments "as early as possible so as to avoid undermining the

purposes of the issue preclusion doctrine." *Id.* at ¶ 22, 300 P.3d at 960. "[W]hatever evidence a party has supporting a claim of issue preclusion should be presented with a timely motion or at a hearing thereon." *Id.*

¶ 17 Casto, however, never sought a pretrial ruling on issue preclusion. Like the plaintiff in *Vanderpool*, Casto knew the relevant facts throughout this litigation. Casto asserted in his answer that "[p]etitioners' claims are or may be barred by issue preclusion," but he did not ask the Colorado court to rule on the issue before trial even though he had numerous opportunities to do so. *See JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1271 (Colo. App. 2011) ("The identification of an affirmative defense in an answer . . . , without more, fails to preserve a matter for appellate review."). Unlike the plaintiff in *Vanderpool*, Casto did not assert the issue at trial, in his closing argument, or in his motion for directed verdict. Although Casto referred in that motion to several other affirmative defenses he had pleaded in his answer, he did not address issue preclusion.

¶ 18 In his opening brief, Casto asserts that he preserved the issue, citing several parts of the record where he claims he asked the

Colorado court to rule on issue preclusion. But none of these citations supports his contention. In addition to the reference to issue preclusion in his answer — which alone was insufficient to preserve the issue — Casto points to the discussion of the California conservatorship proceedings in McMinimee's amended expert report. Further, he cites a pretrial filing in which he said the sisters "are now seeking not a second, but a third bite at the apple." Finally, he cites his trial brief, in which he included, as background information, the statement that the sisters "first filed this action in Contra Costa County, CA. The [court] dismissed [their] claim for improper venue and lack of jurisdiction."

¶ 19    None of these references was sufficient to preserve Casto's issue preclusion argument for appeal, however. Indeed, while we acknowledge that McMinimee appears to suggest at the conclusion of her report that the conservatorship accounting issues had "already been litigated in the California court" and, therefore, were not "open to re-analysis in this case," we see no place in the record where Casto himself asked the court to apply issue preclusion to defeat any of the sisters' claims. "[M]erely acknowledging the existence of a particular legal principle is not the same as asking a

9

court to make a ruling applying it." *Vanderpool*, ¶ 23, 300 P.3d at 960.

¶ 20    In sum, because Casto did not preserve his issue preclusion affirmative defense, we do not consider it on the merits. *See Melat, Pressman & Higbie*, ¶ 18, 287 P.3d at 847.

### III.    The Colorado Court's Judgment on the Sisters' Breach of Trust and Civil Theft Claims

¶ 21    Casto next challenges the Colorado court's judgment in the sisters' favor on their breach of trust and civil theft claims. His arguments are unavailing.

### A.    Standard of Review

¶ 22    "A trial court's judgment following a bench trial presents a mixed question of law and fact." *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 33, 529 P.3d 599, 607. "We review the court's factual findings for an abuse of discretion and its legal conclusions de novo." *Id.* (Although a division of this court applied the clear error standard of review to the court's factual findings when considering a sufficiency of the evidence challenge in a civil case, *see Black v. Black*, 2018 COA 7, ¶ 92, 422 P.3d 592, 607, we are bound by the supreme court's

holding in *Center for Excellence in Higher Education* and therefore review the court's findings of fact for an abuse of discretion. The record supports the Colorado court's findings in this case under either standard of review.)

## B. Choice of Law

¶ 23 Before considering whether the record supports the Colorado court's entry of judgment in the sisters' favor on their breach of trust and civil theft claims, we must first determine whether California or Colorado law governs those claims.

¶ 24 "Parties may contract for the application of a state's law to determine particular issues." *McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Ctrs.-Centerra LLC*, 2021 COA 2, ¶ 14, 486 P.3d 439, 446. The trust instrument provides that "[a]ll questions concerning the validity, interpretation, and administration of this instrument . . . shall be governed by the laws of the State of California, regardless of the domicile of any Trustee or beneficiary." A trial court's ruling on choice of law involves a question of law that we review de novo. *Paratransit Risk Retention Grp. Ins. Co. v. Kamins*, 160 P.3d 307, 314 (Colo. App. 2007).

11

¶ 25     In their breach of trust claim, the sisters alleged that Casto violated the trust instrument and his corresponding duties under Colorado and California law to act in good faith and in the beneficiaries' interests. To the extent that this claim requires us to consider legal principles, and not solely the terms of the trust instrument, we apply California law. But the terms of the trust instrument largely control our analysis, and each state's laws impose similar duties upon trustees. *Compare* Cal. Prob. Code § 16002(a) (West 2024), *with* § 15-5-105(2)(b), C.R.S. 2024. Thus, our conclusion regarding the governing law is not outcome-determinative.

¶ 26     The sisters' civil theft claim, however, sounded in tort. Although the trust instrument provides that California law applies to questions regarding the trust's administration, we are not convinced that a trustee's alleged commission of torts merely raises issues of trust administration. *See McWhinney*, ¶ 69, 486 P.3d at 453-54 (applying the parties' contracted-for choice of law provision to the contract claims but applying Colorado law to the tort claims); *see also* Restatement (Second) of Conflict of L. § 268 (Am. L. Inst. 1971). To determine which state's substantive law applies to a tort

12

claim filed in a Colorado civil action, courts in this state apply the "most significant relationship to the occurrence and parties" test. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007); *see also* § 15-5-107(1)(b), C.R.S. 2024. Under that test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *AE, Inc.*, 168 P.3d at 510 (quoting Restatement (Second) of Conflict of L. § 145(1) (Am. L. Inst. 1971)); *see also* Restatement (Second) of Conflict of L. at § 6. Relevant considerations include

(a) "the place where the injury occurred";

(b) "the place where the conduct causing the injury occurred";

(c) "the domicil [sic], residence, nationality, place of incorporation and place of business of the parties"; and

(d) "the place where the relationship, if any, between the parties is centered."

*AE, Inc.*, 168 P.3d at 510 (quoting Restatement (Second) of Conflict of L. § 145(2)).

13

¶ 27    In an October 2019 filing with the California court, Casto said that he resided in Colorado and performed the trust's "day-to-day activities" in this state.  Casto later registered the trust in Colorado.  Casal resided in Colorado at the end of her life, and the sisters lived in Illinois and North Carolina, respectively, when Casto administered the trust.  Thus, Colorado has the most significant relationship to the trust and Casto's conduct during his tenure as trustee.  Accordingly, based on the record in this case, we apply Colorado law to the sisters' civil theft claim.

## C.    The Record Supports the Colorado Court's Judgment on the Sisters' Breach of Trust Claim

¶ 28    Casto contends that "the trial court erroneously conflated the conservatorship accounting with the trust accounting and . . . misapplied the trust [instrument's] limitation of liability for the trustee."  But Casto's argument on this point is a moving target.  As best as we can determine from his briefs, he argues that the Colorado court erred by finding that his conduct fell below the standard of care for purposes of the sisters' breach of trust claim.  (Similarly, he asserts that the Colorado court erred by finding that

he had acted knowingly or intentionally for purposes of the sisters' civil theft claim. We address the civil theft claim in Part III.D *infra*.)

¶ 29    California probate law provides that "[t]he trustee has a duty to administer the trust solely in the interest of the beneficiaries," Cal. Prob. Code § 16002(a), and a violation of that duty is a breach of trust, *see* Cal. Prob. Code § 16400 (West 2024). Similarly, trustees administering a trust in Colorado have a duty to "act in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." § 15-5-105(2)(b).

¶ 30    Casto's argument centers on the trust instrument's exculpation clause, which provides that "[n]o Trustee shall be liable to any interested party for acts or omissions of that Trustee, except those resulting from that Trustee's willful misconduct or gross negligence." He contends that, even if he acted negligently, he did not engage in "willful misconduct or gross negligence"; therefore, the exculpation clause defeats the sisters' breach of trust claim.

¶ 31    In its post-trial order, the Colorado court said that,

> Given the frequency of the movements and the selective provision of account summaries, the court finds, by a preponderance of the evidence, that the money was being intentionally moved in an attempt to obscure

> the beneficiaries from receiving a full accounting. The court finds that the movement of funds was more than mere negligence and rose to the level of knowingly hiding funds in a manner that would result in the beneficiaries being deprived of an accurate accounting.

The Colorado court cited, as additional evidence of Casto's willful misconduct and gross negligence, his (1) failure to provide information that the sisters reasonably requested; (2) false, incomplete, and misleading accounting and financial reports; (3) failure to provide annual trust accountings; (4) failure to support his trustee compensation with any description of the services he provided to the trust; (5) expenditure of trust funds for his own benefit and for the benefit of his spouse; (6) use of trust monies to pay personal travel expenses; (7) failure to provide documentation to support numerous expenditures; and (8) failure to file timely income tax returns.

¶ 32   The record supports the Colorado court's findings. Kerr testified that Casto frequently moved money between several bank accounts, commingled trust funds with funds in a separate family trust to which he had access, paid himself and others from the trust without any documentation or receipts, used trust assets to

pay for personal travel, and provided incomplete and unreliable accountings of his financial dealings as trustee.

¶ 33    Kerr further testified that Casto transferred title to Casal's vehicle to himself and his wife without reporting the transfer in any of his accountings. Kerr also identified specific conduct demonstrating that Casto acted intentionally, rather than negligently: (1) he reported some, but not all, of the transactions that appeared in certain trust bank account statements; (2) he reported certain expenses in uneven dollar amounts as "gift card" purchases for caregivers, although gift cards are usually purchased in even dollar amounts; and (3) he made payments in the same dollar amount to different entities on the same day so the second payment would appear to be an accidental duplicate. The sisters' testimony corroborated Kerr's analysis.

¶ 34    Casto sought to justify certain of his actions as either expressly authorized by the trust instrument or beneficial to the trust. The Colorado court was afforded the opportunity to consider Casto's explanations, together with the above evidence, and concluded that Casto was liable to the sisters. "If the evidence is conflicting, we may not substitute our own conclusions for those of

the trial court merely because there may be credible evidence supporting a different result." *Frisco Lot 3 LLC v. Giberson Ltd. P'ship, LLLP*, 2024 COA 125, ¶ 66, 564 P.3d 1061, 1074.

¶ 35     For these reasons, the Colorado court did not err by entering judgment against Casto on the sisters' breach of trust claim.

### D.     The Record Supports the Colorado Court's Judgment in the Sisters' Favor on Their Civil Theft Claim

¶ 36     Casto next contends that the record does not support the Colorado court's finding that he committed civil theft.  We are unpersuaded.

¶ 37     Colorado's civil theft statute allows the owner of stolen property to recover three times the amount of actual damages, plus attorney fees, from the thief.  § 18-4-405, C.R.S. 2024; *State v. 5 Star Feedlot Inc.*, 2019 COA 162M, ¶ 14, 487 P.3d 1183, 1187, *aff'd on other grounds sub nom. Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*, 2021 CO 27, 486 P.3d 250.  "[T]o prevail on a civil claim under that statute, the owner must prove all of the elements of criminal theft . . . ."  *5 Star Feedlot*, ¶ 14, 487 P.3d at 1187.  Those elements include that the defendant "(1) knowingly obtained, retained, or exercised control over anything of value of another without

authorization; and (2) intentionally or knowingly deprived the other person permanently of the use or benefit of the property." *Million v. Grasse*, 2024 COA 22, ¶ 44, 549 P.3d 1043, 1051; § 18-4-401(1), C.R.S. 2024.

¶ 38    The Colorado court found that Casto

- "repeatedly moved money between accounts when providing trust accountings";

- "failed to provide information" that the sisters had requested;

- "made disbursements to himself" for "personal trips," charged expenses to Casal's credit cards, and paid third parties "without providing supporting documentation";

- misrepresented "the nature of payments"; and

- "knowingly exercised control over trust assets[,] and, through deception, by transferring money between accounts and misrepresenting the nature of the transactions, intended to deprive the beneficiaries of the funds."

¶ 39    The record supports the Colorado court's findings. Kerr testified at length about Casto's repeated transfers of trust assets

19

between bank accounts and said that Casto made payments from the trust assets to himself and others without documentation or receipts. The same evidence that was sufficient to prove that Casto engaged in willful misconduct similarly proves that he acted intentionally or knowingly for purposes of the sisters' civil theft claim. We perceive no abuse of discretion in the Colorado court's finding that these actions demonstrated Casto's knowing retention of trust assets with the intent to deprive the sisters — who were equal trust beneficiaries with Casto — of those assets.

¶ 40    Thus, the Colorado court did not err by entering judgment in the sisters' favor on their civil theft claim.

IV.    Attorney Fees

A.    Attorney Fees and Expert Witness Fees

¶ 41    Casto argues that the Colorado court's award of attorney fees and Kerr's expert witness fees to the sisters was unreasonable because it included fees for work begun in 2019, two years before the sisters filed their complaint in Colorado. But Casto failed to raise this argument below. He neither responded to the sisters' bill of costs nor requested a hearing on the reasonableness of the amount of attorney fees and expert witness fees they sought. Casto

20

contends that he preserved this issue in his answer, but nowhere in that pleading did he challenge the reasonableness of the sisters' fee requests, nor could he have done so at that early point in the litigation. Thus, we decline to address the issue on the merits. *See Hoyman v. Coffin*, 976 P.2d 311, 315 (Colo. App. 1998) (declining to consider an unpreserved argument regarding the district court's attorney fee award).

### B. Appellate Attorney Fees

¶ 42　Both Casto and the sisters request an award of appellate attorney fees.

¶ 43　Casto supports his request by citing a provision of the trust instrument that allows the trustee to obtain reimbursement from the trust for all expenses incurred in taking actions "for the protection of the trust property and of the Trustee in the performance of the Trustee's duties." However, because Casto did not explain the legal and factual basis for his request for a fee award from the sisters, his request fails. *See* C.A.R. 39.1.

¶ 44　The sisters request, under section 15-10-504(2)(a), C.R.S. 2024, and section 16420(a)(3) of the California Probate Code (West 2024), an award of the attorney fees they incurred in this appeal to

21

defend the judgment in their favor on their breach of trust claim, and, under section 18-4-405, an award of the appellate attorney fees they incurred in defending the judgment in their favor on their civil theft claim. They also seek an award of all their appellate attorney fees under section 13-17-102(2), C.R.S. 2024, on the grounds that all of Casto's arguments in this appeal lacked substantial justification. We address each request in turn.

¶ 45 First, the sisters contend that they are entitled to an award of their appellate attorney fees, under Colorado and California law, for defending the Colorado court's breach of trust judgment in this appeal. We apply California law to such request, as we did when considering the merits of the breach of trust claim. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 18, 351 P.3d 493, 498.

¶ 46 The sisters argue that they are entitled to such appellate attorney fees under section 16420(a)(3) of the California Probate Code, which provides, "If a trustee commits a breach of trust, . . . a beneficiary . . . of the trust may commence a proceeding . . . [t]o compel the trustee to redress a breach of trust by payment of money or otherwise." Cal. Prob. Code. § 16420(a)(3). But the

22

sisters do not identify a statute analogous to section 16420(a)(3) that allows beneficiaries to recover their appellate attorney fees. The general rule in California is that "[t]rust beneficiaries must ordinarily pay their own attorney fees in challenging the trustee's conduct, even when they are successful." *Leader v. Cords*, 107 Cal. Rptr. 3d 505, 510 (Ct. App. 2010); *see also* Cal. Civ. Proc. Code § 1021 (West 2024). Section 17211(b) of the California Probate Code (West 2024) provides a limited exception to the general rule, but the sisters do not assert that such exception applies.

¶ 47     In the section of his reply brief addressing the Colorado court's award of attorney fees and expert witness fees to the sisters, Casto concedes, without analysis or explanation, that he "does not dispute that the fees and costs may be awarded pursuant to . . . Cal. Prob. C[o]de § 16420," although he contests the amount of fees the Colorado court awarded to the sisters. But we are not bound by unsupported legal assertions. Because the sisters do not explain why they are entitled to an award of their appellate attorney fees under section 16420(a)(3), we decline to award them the appellate fees they incurred in defending the judgment entered in their favor on their breach of trust claim.

23

¶ 48    Second, the sisters contend that, under section 18-4-405, they are entitled to recover the appellate attorney fees they incurred in defending the judgment entered in their favor on their civil theft claim.  Under Colorado law, "an award of attorney fees to a prevailing plaintiff on a civil theft claim is mandatory." *Steward Software Co. v. Kopcho*, 275 P.3d 702, 712 (Colo. App. 2010), *rev'd on other grounds*, 266 P.3d 1085 (Colo. 2011).  Such an award includes "fees incurred in [the] appeal allocable to the issues on which [the subject party] prevailed." *Id.*  We award the sisters their appellate fees for the civil theft claim on this basis.  Because Casto's issue preclusion argument impacted all of the sisters' claims — including their civil theft claim — the attorney fees to which they are entitled under the fee-shifting provision of the civil theft statute includes the fees they incurred in responding to Casto's issue preclusion argument in this appeal.

¶ 49    Finally, the sisters contend that they are entitled to an award of their appellate attorney fees under section 13-17-102(2), which provides that "the court shall award . . . reasonable attorney fees against any attorney or party who has brought or defended a civil

24

action, either in whole or in part, that the court determines lacked substantial justification."

¶ 50    We conclude that the fourth issue Casto asserted on appeal — that the Colorado court's imposition of attorney fees and expert witness fees was unreasonable — lacked substantial justification for two reasons.  First, Casto did not contest below the Colorado court's award of attorney fees to the sisters, nor did he cite in his opening brief any portion of the record where he preserved the issue.  Second, Casto cited no legal authority for the proposition that a court may not award attorney fees for work performed two years before the filing of the case.  Thus, we award the sisters their appellate attorney fees as to the fourth issue, pursuant to section 13-17-102(2).

¶ 51    We remand the case to the Colorado court to determine the amount of reasonable appellate attorney fees that the sisters incurred in defending the judgment entered in their favor on their civil theft claim, including their appellate attorney fees relating to Casto's issue preclusion argument, and the appellate fees they incurred in addressing Casto's attack on the reasonableness of the

amount of attorney fees and expert witness fees the Colorado court awarded to the sisters. *See* C.A.R. 39.1.

## V. Disposition

¶ 52 The judgment is affirmed, and the case is remanded to the Colorado court for determination of the amount of attorney fees to be awarded to the sisters.

JUDGE JOHNSON and JUDGE HAWTHORNE concur.