Dennis FISCHER, Julie Fischer, James Horn, Judy Horn, Todd Niggeling, Liz Niggeling, Kraig Sankey, Christine Sankey, Shaun Smith, Kari Smith, Mark Stevenson, Lorin Walker and Linda Walker, Appellees,

and

Key Bank USA, N.A., Intervenor–Appellee,

v.

**CITY OF SIOUX CITY,**
Iowa, Appellant.

No. 01–0328.

Supreme Court of Iowa.

Dec. 18, 2002.

James L. Abshier, City Attorney, Sioux City, for appellant.

Steven R. Jensen of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, Sioux City, for appellees.

Ross W. Johnson of Faegre & Benson, L.L.P., Des Moines, for intervenor-appellee Key Bank USA, N.A.

LARSON, Justice.

Several Sioux City homeowners sued the city when a storm sewer overflowed and damaged their properties. The district court, through the application of "offensive issue preclusion," granted the plaintiffs' motion for partial summary judgment based on a prior case in which the city was found to be negligent in the design of the same drainage system. We reverse and remand.

## I. *Background Facts and Proceedings.*

These plaintiffs lived at or near the intersection of Sergeant Road and Walden Avenue in Sioux City when, on July 2, 1999, a rainstorm of unprecedented proportions dumped three inches of rain on the watershed within twenty-five minutes. Water ponded at the intersection to a depth of about six feet and extended in three directions for about a block. The basements or ground floors of all of the plaintiffs' houses filled with water, damaging the plaintiffs' homes and personal property.

The plaintiffs filed seven separate lawsuits against the city on August 11, 1999, and the cases were consolidated on August 7, 2000. Trial was set for January 9, 2001. On November 9, 2000 (two months before trial), the plaintiffs filed a motion for partial summary judgment, which raised, for the first time, the plaintiffs' claim of issue preclusion that is at issue in this appeal. On January 2, 2001, a week before trial, the court granted the plaintiffs' motion for partial summary judgment. This order precluded the city from relitigating the question of its negligence in designing the storm system. (Issues of proximate cause and damages remained for trial.) The city immediately sought interlocutory appeal in this court (ultimately denied) and, on the same day, moved for a continuance. On the day the trial began, the court denied the motion for a continuance. In the meantime, on January 5 (three days after the order in question and four days before trial), the city moved for reconsideration of the court's order granting partial summary judgment. The trial began on January 9, and the motion for reconsideration of the issue-preclusion matter was denied two days later. The city complains that, in view of this timeline, it did not have adequate notice of, or time to respond to, the issue-preclusion claim.

The plaintiffs' claim of issue preclusion was based on a judgment that had been obtained earlier against the city for damages sustained in a 1996 flood at the same intersection. *See Kelly v. City of Sioux City*, LACV 115635 (Woodbury County). The judgment in the *Kelly* case was based on a finding by the court that the storm sewer was negligently designed by using too small a pipe. The court set the Kellys' damages at $67,851, and the city did not appeal. Affidavits by city officials stated that the city did not appeal because it was not economically advisable to do so.

The present appeal concerns only the court's decision to foreclose the city from relitigating the issue of negligent design. Issues of proximate cause and damages were tried to the court.

It is undisputed that the plaintiffs did not plead the theory of issue preclusion; this theory was first raised in their motion for partial summary judgment filed just before trial was to begin. The district court ruled that, despite the fact the plaintiffs had not expressly pled issue preclusion, they nevertheless could assert it because (1) under notice pleading the petition sufficiently raised the issue, and (2) the city had "tried" the issue of preclusion by consent. Following trial the court entered judgments for the plaintiffs totaling $695,237.39. On appeal the city raises four issues, but we believe one is dispositive: Did the court err in imposing offensive issue preclusion?

In *Hunter v. City of Des Moines*, 300 N.W.2d 121 (Iowa 1981), we explained issue preclusion in general and offensive issue preclusion in particular:

In general, the doctrine of issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

*Hunter*, 300 N.W.2d at 123 (quoting Restatement (Second) of Judgments § 68 (Tentative. Draft No. 4 1977)) (footnote omitted). We continued:

As we have noted in prior cases, the doctrine may be utilized in either a defensive or an offensive manner.

The phrase "defensive use" of the doctrine of collateral estoppel is used here to mean that a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense.

On the other hand, the phrase "offensive use" or "affirmative use" of the doctrine is used to mean that a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim.

In other words, defensively a judgment is used as a "shield" and offensively as a "sword."

*Hunter*, 300 N.W.2d at 123 (quoting *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971)) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4 (1979)).

We concluded in *Hunter* that issue preclusion may be invoked, even without mutuality of the parties, if four prerequisites are met: (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment. *Hunter*, 300 N.W.2d at 123; *see also United Fire & Cas. Co. v. Shelly Funeral Home*, 642 N.W.2d 648, 655 (Iowa 2002).

If, however, issue preclusion is to be used offensively, as it is in this case, two additional questions must be answered: (1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues of its negligence and proximate cause, and (2) whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues. *Hunter*, 300 N.W.2d at 126 (citing Restatement (Second) of Judgments § 88 (Tentative Draft No. 2, 1975)). For a general discussion of offensive issue preclusion in Iowa, see Bruce C. Kempkes, *Issue Preclusion: Parklane Hosiery v. Shore Revisited*, 31 Drake L.Rev. 111 (1981–82).

## II. *Application of Preclusion Principles.*

A. *Must issue preclusion be pled?* Offensive issue preclusion lacks some of the policy support underlying the defensive use of the doctrine.

First, offensive use of collateral estoppel [issue preclusion] does not promote judicial economy in the same manner as defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

*Parklane Hosiery Co.,* 439 U.S. at 329–30, 99 S.Ct. at 650–51, 58 L.Ed.2d at 561 (citation omitted) (footnote omitted).

A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable.

*Id.* at 330, 99 S.Ct. at 651, 58 L.Ed.2d at 561; *see also Blonder–Tongue Labs. v. Univ. of Ill. Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

The fairness issue is stressed by the city here: the rain amount in 1999, said to be a "500 year" rain, greatly exceeded that in 1996, characterized as a "once in a lifetime" rain, and the amount of damages was considerably higher ($695,237.39 to $67,851). The city contends it was unfair to apply issue preclusion because it was not reasonably foreseeable to the city that a rain of this magnitude in 1999 would come within only three years of the 1996 event, which was itself almost unprecedented. The city relies on one of the examples in *Hunter* illustrating when offensive issue preclusion should not be applied. That is when " 'it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action. . . .' " *Hunter,* 300 N.W.2d at 125 n. 4 (quoting Restatement (Second) of Judgments § 68.1 (Tentative Draft No. 4, 1977)). In other words, it was not reasonably foreseeable that the size of the drainage pipe found to be insufficient for a "once in a lifetime" rain would be an issue only three years later, when a "500 year"

rain and its resulting greater damage occurred.

■■ If a party fails to assert offensive issue preclusion at the earliest practicable time, the unfairness already inherent in offensive issue preclusion will only be exacerbated. That is why, we believe, the general rule is that issue preclusion— whether offensive or defensive—must be pled and proved by the party asserting it.[1]

A party asserting res judicata (or mutual collateral estoppel) must plead and prove the identity of parties, that is that the parties in the prior action were the same as the parties to the pending action, or that the parties to the pending action are in privity with the parties to the prior action. Absent such allegation or proof, res judicata is unavailable. In jurisdictions where the requirement of mutuality has been abandoned for the doctrine of collateral estoppel, the party asserting collateral estoppel is required to plead and prove that the party against whom the doctrine is asserted was a party or in privity with a party to the prior action.

47 Am.Jur.2d *Judgments* § 724, at 194–95 (1995) (footnotes omitted); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4405, at 82 (2d ed.2002) [hereinafter Wright & Miller] ("Ordinarily both issue preclusion and claim preclusion are enforced by awaiting a second action in which they are pleaded and proved by the party asserting them."). This authority has further stated:

In contrast to the well-settled rules that apply to defendants, the procedural requirements imposed on plaintiffs who

---

1. It is not always possible to assert issue preclusion in a pleading because the need for it may not then be apparent. For example, see *Dettmann v. Kruckenberg,* 613 N.W.2d 238, 243 (Iowa 2000) (issue preclusion not pled; defendant filed supplemental answer to interrogatory suggesting person other than defendant was driving car; issue preclusion applied based on earlier criminal conviction of defendant as driver).

wish to assert preclusion have received surprisingly little attention. It seems useful to draw a distinction between a plaintiff's reliance on res judicata to defeat some position taken by the defendant and a plaintiff's reliance on res judicata to establish a claim....

... [I]t is difficult to understand why plaintiffs should not be required to plead preclusion as clearly as defendants—the need for notice and an opportunity to respond seems the same. The most frequent need for a specific pleading is likely to arise from the growing use of nonmutual offensive issue preclusion; although some circumstances may lead a defendant to expect the preclusion argument, the weaker the argument the greater the need for notice. Some courts have suggested that specific notice is required, and the same approach has been taken when a demand for declaratory relief rests on preclusion. This approach should be followed by asking that notice be provided without insisting on a particular method of notice by pleading.

Whatever the method by which the question is raised, the burden of establishing preclusion is placed on the party claiming it.

18 Wright & Miller § 4405, at 108–10.

In Iowa we apparently have no cases directly on point. In *Hunter* the *manner* of raising the offensive issue preclusion was not discussed because it was not an issue. In that case, the plaintiff specifically pled offensive issue preclusion. *See Hunter*, 300 N.W.2d at 124. Cases from other jurisdictions, however, hold that issue preclusion must be pled. *See, e.g., Harvey v. United Transp. Union*, 878 F.2d 1235 (10th Cir.1989).

Although the use of issue preclusion by plaintiffs is not subject to [Federal Rule of Civil Procedure 8(c)], the rationale for requiring a party to plead defensive issue preclusion pretrial applies to offensive use as well—to provide "the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate." Although this notice requirement was established in a case approving defensive use of issue preclusion, *it has even more force for offensive use, when, as here, plaintiffs seek to benefit from litigation to which they were not parties.*

*Id.* at 1243 (quoting *Blonder–Tongue Labs., Inc.*, 402 U.S. at 350, 91 S.Ct. at 1453, 28 L.Ed.2d at 812) (emphasis added); *see also Herzbrun v. Milwaukee County*, 504 F.2d 1189, 1196 (7th Cir.1974) (plaintiffs failed to raise claim of offensive issue preclusion in a pleading or motion; offensive issue preclusion rejected); *Cashelmara Villas, Ltd. P'ship v. DiBenedetto*, 87 Ohio App.3d 809, 623 N.E.2d 213, 215 (1993) (must plead and prove issue preclusion); *Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 486 N.E.2d 1165, 1168 (1984) ("In order to assert collateral estoppel successfully, a party must plead and prove [it].").

The plaintiffs do not challenge the general rule that a party claiming issue preclusion must claim and prove it. Rather they argue, and the district court ruled, that (1) our notice-pleading rules do not require the pleading of a *theory* of recovery, and (2) the city tried the issue by consent.

■■■ B. *Issue preclusion principles applied.* The plaintiffs correctly note that, under notice pleading, a petition need not identify a specific legal theory; it is sufficient if the prima facie elements of a claim are stated, and this is fair notice to the defendant. *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981) (citing *Lamantia v. Sojka*, 298 N.W.2d 245,

247 (Iowa 1980)). However, the petition must "apprise a defendant 'of the incident out of which the claim arose and of the general nature of the action.'" *Lamantia*, 298 N.W.2d at 247 (quoting *Roberts v. Acres*, 495 F.2d 57, 58 (7th Cir.1974)); *accord Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994).

■ The petitions in this case cannot be construed broadly enough to encompass offensive issue preclusion because they did not identify either the incident giving rise to the claim of issue preclusion or the general nature of the claim. The incident identified in these petitions was the flood of 1999, and the general nature of the claim was that the city was negligent in designing the drainage system. However, the plaintiffs' claim of issue preclusion is based on an entirely different incident: the district court's entry of the allegedly preclusive judgment in 1996. The "general nature" of the plaintiffs' present claims, *i.e.,* issue preclusion, moreover, could not be gleaned from the petition, which alleged elements of negligent design—not issue preclusion. *Cf. Davis v. Ottumwa YMCA*, 438 N.W.2d 10, 13 (Iowa 1989) ("It is difficult to believe that a state common-law claim based on negligence and breach of contract could be construed to be fair notice of an intent to rely on a federal statutory [ERISA] claim.").

■ *C. The "tried by consent" argument.* The plaintiffs contend the city implicitly agreed to resolve the issue-preclusion claim on its merits by failing to actively oppose it. The facts, however, do not support that argument. As soon as the plaintiffs asserted the issue-preclusion claim in their motion for partial summary judgment, the city resisted. The court did not rule on the summary-judgment motion until a week before the trial began. The day after the court ruled on the summary-judgment motion, the city applied for discretionary review in our court and also filed a motion for a continuance. The court did not rule on the motion for a continuance until the day of trial and then denied it. From the day the plaintiffs filed their motion for partial summary judgment until, literally, the trial was underway, the city did not know whether it was defending a fact issue on their alleged negligence or a legal issue on the application of issue preclusion. In view of this procedural history, we reject the plaintiffs' argument that the city litigated the issue-preclusion matter by not sufficiently resisting it.

### III. *Conclusion.*

Rulings on the application of issue preclusion are reviewed for abuse of discretion. *Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982). We believe that discretion was abused here because the city was denied adequate time to deal with issue preclusion after the district court ordered it to be applied and the date the trial began (one week). This was compounded by the refusal of the court to grant the city's application for a continuance. The potential unfairness in applying issue preclusion, discussed above, combined with the lack of adequate time to meet this theory demands the case be reversed and remanded for a new determination of the negligence issue without application of issue preclusion. *See Harvey*, 878 F.2d at 1243 (failure to assert offensive issue preclusion in timely manner waives the claim). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**