# IN THE COURT OF APPEALS OF IOWA

No. 20-0352
Filed March 17, 2021

**MARY ELIZABETH SLEZAK,**
Plaintiff-Appellee,

**vs.**

**CARL W. MATHERLY,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Carl Matherly appeals, and Mary Slezak cross-appeals, the district court's rulings following a bench trial. **AFFIRMED.**

Shaun Thompson of Newman Thompson & Gray PC, Forest City, for appellant.

Joseph G. Gamble and Tara J. Higgins of Duncan Green, P.C., Des Moines, for appellee.

Heard by Bower, C.J., and Doyle and Mullins, JJ. Gamble, S.J., takes no part.

**MULLINS, Judge.**

Carl Matherly appeals, and Mary Slezak (MaryBeth) cross-appeals, the district court's rulings following a bench trial. The parties raise several issues on appeal.

I.      **Background Facts and Proceedings**

This case arose as a part of a bitter family dispute. MaryBeth is the beneficiary of a trust she established in 1977, naming Carl as her trustee. Carl's wife of sixty years and the mother of MaryBeth and her two older siblings, Maribel Matherly, filed for dissolution of marriage in 2016.[1] Over the course of dissolution proceedings, Maribel discovered an "MEM" trust naming her the trustee and listed it among her property for the purposes of distribution. Shortly thereafter, Carl informed MaryBeth that it was actually her trust, the same one established in 1977. When Maribel was alerted to the status of the MEM trust, she immediately removed it from lists of her assets to be distributed in the dissolution proceedings. Carl continued to insist the MEM trust was marital property. MaryBeth intervened in her parents' dissolution proceeding, asking the court to find the MEM trust was not marital property subject to distribution. The dissolution court concluded that the MEM trust was the property of MaryBeth, and that finding was affirmed by this court on appeal. *See In re Marriage of Matherly*, No. 18-0625, 2019 WL 3334355, at *6–7 (Iowa Ct. App. July 24, 2019).

Following her intervention in the dissolution proceeding, MaryBeth filed the petition underlying this appeal. Litigation has been complicated. MaryBeth

---

[1] Maribel Matherly passed away during the pendency of dissolution proceedings.

successfully moved for summary judgment, asking the district court to find certain issues considered in the Matherly dissolution matter preclusive in the instant case. The district court granted the motion in part, recognizing the factual findings of the dissolution court. The claims were tried before the court sitting in equity in November 2019. The district court found the claims should be heard pursuant to the Iowa Trust Code, Carl was the trustee of the MEM trust, and Carl breached the fiduciary duties he owed to the trust. The court dismissed a number of other claims. Carl appeals and MaryBeth cross-appeals.

## II.     Discussion

### A.     Nature of the Proceedings and Preclusion

MaryBeth's petition raised claims for offensive issue preclusion; breach of fiduciary duty; recovery of trust assets and income; accounting; constructive trust; wrongful taking, concealing, and disposition of trust property; conversion; unjust enrichment; breach of contract; injunctive relief; and attachment. She invoked the Iowa Trust Code, Iowa Code chapter 633A (2017), and made a jury demand for all issues. Carl raised defenses pursuant to chapter 633A; consent, release, or affirmation of Carl's conduct; statute of limitations; laches; and res judicata. Carl argued, as he does on appeal, that the statutes contained in Iowa Code chapter 633A were not applicable because the trust code does not apply to a resulting trust, which was the remedial term used by the dissolution court to find the MEM trust belonged to MaryBeth. *See* Iowa Code § 633A.1102(18)(*l*).[2] Carl's answer

---

[2] Effective July 1, 2020, the definitional provisions were renumbered to section 633A.1102(21)(*l*) (Supp. 2020). *See* 2020 Iowa Acts ch. 1076, §§ 1–2 (adding new subsections).

also contained a jury demand. A jury trial was initially scheduled for November 4, 2019.

Both parties moved for summary judgment, and a hearing was held on September 27, 2019. During the hearing, MaryBeth withdrew her jury demand and Carl reiterated his. On October 21, MaryBeth filed for dismissal of her claims for conversion and breach of contract. Her dismissal also argued that the remaining issues were solely equitable and arose due to breach of trust, requiring that her claims be tried to the court. The district court ruled on the motions for summary judgment later that same day, denying Carl's motion and granting MaryBeth's only to the extent that it recognized the factual findings of the dissolution court. Both parties submitted arguments in writing regarding the jury demand and issue preclusion.

The district court ordered on October 25 that all issues would be tried to the bench. It found chapter 633A was applicable to all remaining claims,[3] which sounded in equity and were statutorily required to be tried "in a court of equity." Iowa Code § 633A.4501(2). It made no further finding regarding offensive issue preclusion at that time. Trial was held in November 2019, and an order followed in February 2020. The district court discussed the dissolution court's factual findings, and it agreed with the summary judgment court "that certain relevant factual findings by the Dissolution court in the Intervention Judgment as specifically

---

[3] In its February 2020 order following trial, the district court included in a footnote that the claims for injunctive relief and attachment "appear to have been resolved by agreement of the parties."

identified within this Order and Judgment Entry are preclusive here." The district court decided the remaining claims pursuant to the Iowa Trust Code.

### 1. Iowa Trust Code

Carl argues this case is not subject to the Iowa Trust Code because it revolves around a resulting trust that is specifically excluded from the statutory definition of "trust." *Id.* §§ 633A.1102(18)(*l*), .1107. Carl's argument focuses on his conduct in 1993, transferring an investment account naming him the trustee to a Maribel Matherly account naming Maribel the trustee. Carl argues that when the dissolution court termed the account a resulting trust created following the trust's failure it left the scope of the Trust Code and that the 1993 failure leaves the resulting trust outside the temporal scope of the Trust Code.

In its order, the district court noted that the investment account that was transferred in 1993 was only one part of the trust corpus. The resulting trust following the failure "is to operate within the confines of the express trust," which continued to exist. "Neither the law nor the evidence presented supports a determination that the Dissolution court's declaration in the Intervention Judgment of a resulting trust over the wrongfully transferred investment Account simultaneously destroyed the trust." The district court also noted the dissolution court's use of the word failure "was not a finding that the MEM Trust itself had disappeared, was terminated, or was otherwise defunct" but "was simply a recognition that Carl's action(s) violating the terms of the MEM Trust cause the MEM Trust to lose one of its assets: the (i)nvestment account." The dissolution court's finding the Trust Account failed was merely remedial, and it indicated that the purpose of growth for the benefit of MaryBeth had failed but was necessary to

allow MaryBeth to reclaim the asset. Furthermore, there was no evidence the trust "was terminated, became obsolete or otherwise disappeared" following Carl's account transfer in 1993. Rather than taking affirmative action to terminate the trust, Carl's conduct confirmed its continued existence. Carl continued to buy and sell trust assets of stock and real property in the name of the MEM Trust, instigated litigation on behalf of the trust, and participated in multiple legal proceedings related to the trust's ownership of the Bonnes Farm. The district court ultimately ordered Carl to return the investment account to the MEM Trust.

Our review of the record reveals that the investment account that gave rise to MaryBeth's intervention in the dissolution was only one asset making up the corpus of the MEM Trust. Following the transfer of the investment account in 1993, the other trust assets remained in the corpus of the trust. Furthermore, after Carl transferred the investment account, the record shows he continued to exercise control over trust assets through affirmative action, including buying and selling stock and enforcing legal rights to financial and property assets. Moreover, MaryBeth filed her petition in this action to enforce her rights as a beneficiary to the larger MEM Trust. Her breach claims related to the assets in the corpus of the trust that were not in any way related to the asset recovered during the dissolution. On our review of the record, we find MaryBeth's claims are for enforcement of her rights as a beneficiary to an express trust created in 1977. The MEM Trust existed at the time of the enactment of the Trust Code and is, therefore, subject to it. *See* Iowa Code § 633A.1106.

*2.     Jury Demand*

"Whether a party is entitled to a jury trial is a legal question.  Therefore, our review is for correction of errors at law."  *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020) (citations omitted).  "'Generally, there is no right to a jury trial for cases brought in equity.'  In determining whether a case is one in equity or at law, we look at the pleadings, relief sought, and essential nature of the cause of action."  *Id.* at 684 (quoting *Hedlund v. State*, 930 N.W.2d 707, 718 (Iowa 2019)).  The initial classification of claims in equity or law does not outweigh the nature of the claims.  *Id.*  "The legal or equitable nature of the proceeding is to be determined by the pleadings, the relief sought, and the nature of the case."  *Carstens v. Cent. Nat'l Bank & Tr. Co.*, 461 N.W.2d 331, 333 (Iowa 1990).

On the first day of trial, the district court heard oral arguments related to the jury demand.  MaryBeth argued that the only claims raised at trial related to breach of trust, which were statutorily required to be tried to the bench sitting in equity.  *See* Iowa Code § 633A.4501(2) ("The remedies of a beneficiary for breach of trust are exclusively equitable and any action shall be brought in a court of equity.").  Carl reiterated his argument that the Trust Code does not apply to resulting trusts.  *See id.* § 633A.1102(18)(*l*) (excluding resulting trusts from the definition of "trusts").  He insisted that the express trust created in 1977 failed when he transferred it to Maribel in 1993 and that the Trust Code applies only to trusts in existence on the Trust Code's effective date of July 1, 2000.  The district court found, "There are no law claims left, in the Court's view, once [MaryBeth] dismissed a couple of counts that were at-law actions."  The case was tried to the bench sitting in equity.

When MaryBeth initiated litigation as an intervenor in the dissolution, she raised the claim as the beneficiary of the trust and owner of trust assets. The dissolution court confirmed that status. In the present case, MaryBeth claims the same status and seeks damages from Carl as the trustee. MaryBeth voluntarily dismissed the conversion and breach-of-contract claims, and the attachment and injunction claims are no longer a part of this litigation. The remaining claims were offensive issue preclusion; breach of fiduciary duty; recovery of trust assets and income; accounting; constructive trust; wrongful taking, concealing, and disposition of trust property; and unjust enrichment. We agree with the district court that these claims sound in equity and seek remedies available pursuant to chapter 633A. Although the original pleadings contained claims requesting legal remedies, the claims presented to the district court were pled in equity and requested equitable relief. Accordingly, we concur with the district court's denial of Carl's jury demand.

### 3. Offensive Issue Preclusion

The district court granted summary judgment in part in favor of MaryBeth, finding factual determinations of the dissolution court were preclusive. Accordingly, our review is for correction of errors at law. *Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017). "Summary judgment is proper only when the entire record demonstrates the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

"In general, the doctrine of issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Hunter v. City of Des Moines*, 300

N.W.2d 121, 123 (Iowa 1981). In order to utilize the doctrine of issue preclusion, four elements must be proved:

> (1) [T]he issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.* (footnote omitted). Offensive use of issue preclusion "mean[s] that a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his [or her] favor an issue which he [or she] must prove as an essential element of his [or her] cause of action or claim." *Id.* (quoting *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971)). In order to use issue preclusion offensively, two additional elements must be proved. Courts examine "(1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues [raised for preclusion], and (2) whether any other circumstances are present that would justify granting the party resisting preclusion occasion to relitigate the issues." *Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002).

MaryBeth's motion for summary judgment was granted to the extent that certain facts found by the dissolution court were preclusive in the present matter. MaryBeth specifically listed nearly forty findings and sought to have them enforced in this matter via issue preclusion.[4] Following the motion for summary judgment, the parties made arguments before the court to determine which facts were preclusive. The district court stated, "the factual findings made by [the dissolution

---

[4] MaryBeth's motion identified each finding alphabetically. We use the same system in our discussion.

court] which have been affirmed by the Court of Appeals should be the facts that the Court in this matter is restricted to essentially." This court's opinion on the dissolution found specifically that the assets once held in the MEM Trust, eventually designated in the Maribel Matherly account, were "not marital property and [were] not subject to division in the distribution of the marital estate" and "affirm[ed] the [dissolution] court's decision in its entirety." *Matherly*, 2019 WL 3334355, at *7, 10.

Carl argues MaryBeth failed to prove elements three and four of the general issue preclusion test and that he did not have "a full and fair opportunity to litigate the issues [raised for preclusion]." *Fischer*, 654 N.W.2d at 547; *accord Hunter*, 300 N.W.2d at 123. Carl targets twelve factual findings. We address them in turn.

Carl argues that finding (c), "the assets of MaryBeth initially funded into the trust had an approximate value of $250,000.00," was not essential and that he did not have full and fair opportunity to litigate the claim in the dissolution matter. We agree with Carl that the paramount concern regarding the trust during the dissolution was ownership of assets, including a Scottrade account, alleged as trust assets. However, in order for MaryBeth to fully litigate her claim as an intervenor and the rightful owner of the assets through tracing the assets, the circumstances of the trust's creation were relevant and essential to the claim. Furthermore, in order for Carl to prove the account was a marital asset, the dissolution court noted that "Carl testified he [transferred an investment account to Maribel] because he felt he had already given MaryBeth and her children more money in the form of other gifts than the value of what was in the trust." Thus, Carl

invoked the value of the trust himself to show he had provided the same value through other gifts.

Carl takes issue with several findings related to the Bonnes Farm, farm land purchased as an asset for MaryBeth's trust, which was eventually sold. Carl takes issue with findings (m) through (r), contained in the dissolution court's footnote 10.

> The monies deposited into the account would have included contract payments made on farmland owned by the trust ("the Bonnes farm"); these payments were made to both the accounts in the name of the trust as well as those accounts with the special M.E.M. designation. . . . The property tax payments for the Bonnes farm were also paid from either the trust account or the accounts with the special M.E.M. designation. The Bonnes farm was ultimately transferred out of the trust in 2003 for a declared value of $172,000.00; while MaryBeth consented to that transfer, she was unaware that the trust received no monetary benefit from the transaction. Carl had no explanation of what occurred with the sale proceeds from the Bonnes farm.

Carl argues the only issue before the dissolution court was ownership of the account and that the sale of the Bonnes farm had no impact on that ownership. He again contends he did not have a full and fair opportunity to litigate these issues. Again, ownership of trust assets was the very issue the dissolution court considered. Thus, the maintenance and sale of a trust asset, including the Bonnes farm, makes accounting of monetary benefits from the sale or lease of that asset and payments, including property taxes, relevant facts. It was necessary and relevant for the dissolution court to trace ownership of money in the relevant accounts through time, including several account transfers and ownership of the Bonnes farm, to determine the rightful owner of the trust assets. Furthermore, Carl had a full and fair opportunity to litigate these facts when he argued the accounts

were marital property in the course of his argument that MaryBeth consented to the transfer of the Bonnes farm.

Carl argues finding (t), his "practice of funding MaryBeth's IRA with checks drawn on the various accounts, both before and after the transfer to the accounts with designation" were not to MaryBeth personally, was irrelevant. One of Carl's defenses to MaryBeth's role as intervenor in the dissolution was that he repudiated the trust after providing the same value in other gifts to MaryBeth and her children. Accordingly, he made the funds transferred to MaryBeth's IRA a relevant fact that was necessary to the court's determination of alleged trust repudiation.

Carl argues finding (v), that he "never provided MaryBeth with any financial statements, tax returns or trust accountings regarding the account in any of its versions" was irrelevant. Carl presented a statute-of-limitations defense, arguing that if the Trust Code applied to the relevant account, the trust expired and should have been distributed to MaryBeth on her fiftieth birthday in 2007, and that the five-year statute of limitations for her ownership claim expired in 2012. Accordingly, the fact that MaryBeth was never provided with trust records was a relevant issue because it would help a factfinder determine whether she was aware of the trust's expiration and her claim to the funds.

Carl argues finding (y), that MaryBeth first received a copy of the trust declaration from 1977 shortly after she received a letter from Carl in 2016 telling her the Scottrade funds were her trust assets, was not essential. Again, Carl argued the statute of limitations for MaryBeth to claim the trust assets expired in 2012. Her knowledge of the expiration of the trust and her time to bring a claim is

relevant to Carl's statute-of-limitations defense and was necessary to the court's determination of whether the discovery rule applied to his case.

Carl argues finding (ee), "Carl's claims lack credibility," was an issue for the jury and too ambiguous to have any preclusive effect. Carl's argument does not specifically target any of the elements required for offensive issue preclusion, but we will address it briefly. *See Fischer*, 654 N.W.2d at 547; *Hunter*, 300 N.W.2d at 123. He testified at trial, making his credibility an issue for the court to determine. Carl's credibility was absolutely relevant and a necessary fact for the dissolution court to consider when making all determinations regarding the ownership of the trust.

Carl argues finding (ii), "that any claim that MaryBeth might be able to assert is barred by the five-year statute of limitations applicable to actions for breach of fiduciary duty is not supported by the record," was irrelevant to the express trust that existed from 1977–1993.[5] The dissolution court made the following statements regarding the statute-of-limitations theories:

> The record is clear that MaryBeth was unaware of the precise provisions of the trust agreement, most notably the provision requiring distribution when she turned 50. Her understanding, as expressed to Carl, was that the trust should continue to grow for her benefit; Carl's actions support this intent through the manner in which he treated the successor accounts as well as his own written statement in the letter dated July 26, 2016 in which he states that the Scottrade account was MaryBeth's. MaryBeth was not on notice that there was an issue regarding the ownership of the assets initially placed in trust for her benefit until Carl repudiated the existence of any trust by making the claim that the Scottrade account was marital

---

[5] Carl concedes that the statute-of-limitations findings related to the resulting trust that existed in 2016 are correct and preclusive. However, later in his appellate brief, Carl raised the exact same statute-of-limitations issue as issue V, insisting he was entitled to summary judgment. Because the issues are identical, they will not be addressed further.

> property. This is consistent with the general rule regarding the tolling of the statute of limitations in an action to enforce a resulting trust: "The statute of limitations will run in favor of a trustee of a resulting or constructive trust from the time he disavows the obligation of the trust and sets up a claim in his own right to the trust property." *Gebhard v. Sattler*, 40 Iowa 152, 157 (1874).

The dissolution court's findings are related to Carl's conduct in continuing to act as the trustee during all relevant periods, even as he unilaterally chose to transfer assets. The court's findings were relevant to Carl's identical argument for the statute-of-limitations defense he raised in the dissolution. Accordingly, those findings are preclusive.

Based on our review of the record, MaryBeth presented sufficient evidence supporting her requested use of offensive issue preclusion. Because there were no remaining genuine issues of material fact regarding the preclusive effect of these findings, the district court properly granted summary judgment. *See Linn*, 903 N.W.2d at 342.

### 4. Claim Preclusion

Carl argues MaryBeth should have joined the claims presented in this action with her intervention in the dissolution. Carl raised this issue during an unreported hearing on his motion for summary judgment, which is reviewed for correction of errors at law. *Id.* Carl never revisited the claim during trial. MaryBeth contests error preservation, arguing the failure to readdress the issue during trial is fatal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). However, "a party receiving a preliminary ruling that does not unequivocally decide an issue must do more to

15

preserve the issue for appellate review." *UE Local 893/IUP v. State*, 928 N.W.2d 51, 61 (Iowa 2019). In comparison of rulings on motions in limine with a specific motion to dismiss, our supreme court has distinguished rulings that are "definitive and decide[] the ultimate issue" preserving error from those that direct a court to consider an issue later in the course of proceedings. *Id.* In the case at bar, Carl raised the issue of claim preclusion during the hearing. The district court ruled on the issue and denied the summary judgment. The issue is preserved. *Id.*

Iowa uses the test adopted in the Restatement (Second) of Judgments when considering claim preclusion. *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719–20 (Iowa 2016).

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
> (2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, or whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at 720 (alteration in original) (quoting Restatement (Second) of Judgments § 24, at 196 (Am. Law Inst. 1982)). The final judgment Carl seeks to enforce through claim preclusion is the dissolution. But, "An action for dissolution of marriage shall be by equitable proceedings, and no cause of action, save for alimony, shall be joined therewith." Iowa Code § 598.3. An exception exists where the dissolution parties raise the issue of ownership of an asset and a third party intervenes to contest ownership of the same asset, provided the rules of procedure permit and

no statute prohibits such action. *Wharff v. Wharff*, 56 N.W.2d 1, 3–4 (Iowa 1952). MaryBeth's intervention was permitted pursuant to this exception.

MaryBeth's intervention in the dissolution and her breach of trust claims now on appeal rely on some of the same facts. However, the dissolution was concerned primarily with dissolving the marriage between Carl and Maribel and equitable distribution of their assets. MaryBeth's permissive intervention was merely an effort to ensure that her assets were not a part of the distribution. Furthermore, the dissolution court expressly stated "further resolution of the remaining claims between MaryBeth and Carl shall be dealt with in [the claims giving rise to this appeal]." While the factual background of the two cases is similar, the nature of the intervention claim raised for dissolution was to settle an ownership issue while the present case deals with separate claims for breach of trust. The dissolution was governed by Iowa Code chapter 598, while the present claims were raised pursuant to chapter 633A. The relief sought in this lawsuit could not have been granted in the dissolution proceeding. Because Carl failed to provide facts showing he was entitled to judgment as a matter of law, we concur with the district court's decision to decline Carl's motion for summary judgment related to claim preclusion. *See Linn*, 903 N.W.2d at 342.

B. Carl's Motion for Summary Judgment

1. *Identity of Trustee*

Carl argues the district court erred in denying his motion for summary judgment arguing that he was not the trustee. Carl insists that the trust at issue is a resulting trust and under the control of a new trustee, Maribel. MaryBeth argues the district court properly determined Carl was the trustee. MaryBeth argues that

under the dissolution court's determination that her interest was in a resulting trust, the resulting trust interest followed her express trust created in 1977 and Carl has always acted under the authority of a trustee, per the original declaration and in practice. Our review is for correction of errors at law. *Id.*

Resulting trusts are specifically defined in the Iowa Code. Iowa Code § 633A.2106. Generally, "[w]here the owner of property gratuitously transfers the property and manifests in the trust instrument an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate as a resulting trust for the transferor or the transferor's estate." *Id.* § 633A.2106(1). Following the hearing on Carl's motion for summary judgment, the district court noted that even though Carl in fact transferred the trust assets, he was not the "transferor" described in the statute. Maribel was never notified that she was made a trustee, nor was MaryBeth. Even after execution of the transfer, Carl acted as the trustee in several ways. Carl continued to exercise actual control over the trust assets through trading, purchasing, and selling assets; engaging in litigation related to trust assets; and conveying to MaryBeth that he was the trustee by telling her the assets were performing well. Carl testified in the dissolution and in the present case that he always considered himself the trustee. We agree with the district court Carl did not produce sufficient facts to show he was entitled to judgment as a matter of law. *See Linn*, 903 N.W.2d at 342.

2. *Uniform Prudent Investor Act*

Carl argues he was entitled to summary judgment on any claim related to duties owed to the trust as a prudent investor including diversification and productivity. In the alternative, he argues the district court erred in interpreting the

terms of the trust and the findings should be reversed. Our review is for correction of errors at law. *Id.*

The 1977 trust declaration lists the duties owed by a trustee in article seven.

ARTICLE SEVEN
In administering the trust hereby created, the Trustee, acting as a fiduciary and primarily in the best interests of the beneficiaries, shall have all the powers, rights and discretions possessed by trustees generally; shall have those powers, rights and discretions that are presently set forth in Sections 699 and 123(1) of the Iowa Probate Code, and in addition specific authority:
A. To retain any property or undivided interests in property received from any source, regardless of any lack of diversification, risk or non-productivity.
. . . .
The Trustee may freely act under any or all of the powers granted it by this agreement in all matters concerning this trust, after forming his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the beneficiaries, without the necessity of obtaining the consent or permission of any person interested therein, or the consent or approval of any court; provided only that he shall exercise such powers at all times in a fiduciary capacity and primarily in the interest of the beneficiaries.

But, trusts are governed by the Trust Code contained in Chapter 633A, which also includes the Uniform Prudent Investor Act. *See* Iowa Code §§ 633A.4301–.4309. The duty to act as a prudent investor may be invoked by language not specifically including the word "prudent." *Id.* § 633A.4309. Accordingly, we agree with the district court that a fact question exists as to whether the duties to diversify and act due to non-productivity were required, and we agree with the district court's decision denying the motion for summary judgment. *See Linn*, 903 N.W.2d at 342.

C.     Invocation and Applicability of the Uniform Prudent Investor Act

Carl argues the Uniform Prudent Investor Act does not apply to this trust because article seven—partially quoted above—exempts him from those duties.

MaryBeth argues the Uniform Prudent Investor Act is not waived by the language of article seven and, even if it is, Carl breached the fiduciary duties owed by a trustee. This case was tried in equity, and our review on appeal is de novo. Iowa R. App. P. 6.907.

The court examined the language of article seven and received expert testimony from a trust manager to determine whether it was sufficient to exempt Carl from the Uniform Prudent Investor Act. MaryBeth's expert testified that the language was commonly present in trusts and that if there was a real intention to promote the retention of certain assets over consideration of prudence, the declaration "would (1) specifically name the stock to be retained, (2) specifically mandate retention rather than merely authorizing it, and (3) specifically release the trustee from any liability related to retention." Carl's expert opined that the powers provided in paragraph A must necessarily be read within the context of the opening paragraph.

The Uniform Prudent Investor Act may be invoked with specific phrases listed in the statute, but it may also be invoked by "comparable language in the provisions of a trust." Iowa Code § 633A.4309. None of the listed language appears in article seven. The Uniform Prudent Investor Act was enacted following the repeal of the Model Prudent Person Investment Act (Model Act). *See* 1999 Iowa Acts ch. 125, §§ 61–70 (enacting Uniform Prudent Investor Act); *id.* § 108 (repealing section 633.123, entitled the Model Prudent Person Investment Act). The Model Act was in effect when the trust declaration was executed in 1977 and

is specifically invoked by the language of article seven.[6]  The Model Act instructs fiduciaries on the standard of conduct expected regarding investments.  Iowa Code § 633.123 (1977).

> 1. *Investments by fiduciaries.*  In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which persons of prudence, discretion and intelligence exercise in the management of their own affairs, not for the purpose of speculation, but with regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety, of their capital.  Within the limitations of the foregoing standards, a fiduciary is authorized to acquire and retain every kind of property and every kind of investment including . . . stocks and shares, preferred or common, which persons of prudence, discretion and intelligence acquire or retain for their own account.

*Id.*  Article seven also invokes section 633.699, entitled Powers of Trustees.  *Id.* § 633.699.  Section 633.699 lists the general powers of trustees.  *Id.*  This section still exists, but it has been transferred to section 633.750.  2010 Acts ch. 1086, § 25.  Following these comparisons between the 1977 and 2017 iterations of the Iowa Code, it is clear that our legislature created separate statutes regarding general trustee powers and investment powers.  The fact that the trust declaration specifically mentioned both section 633.123 and .699 is instructive.  In our role to give effect to the express words of this contract, we must apply the laws governing both the powers of trustees and those specific to investments.  *See Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978).

---

[6] The trust declaration instructs that the "trust is created in Iowa and shall be construed and regulated according to the laws of the State of Iowa."  It does not provide a particular code year to govern the trust.

Once invoked, the Uniform Prudent Investor Act requires that "A trustee shall invest and manage trust property as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." *Id.* § 633A.4302(1) (2017). A trustee is required to consider "the context of the trust portfolio as a whole and as a part of an overall investment strategy." *Id.* § 633A.4302(2). A trustee is also required to "diversify the investments of the trust unless the trustee reasonably determines that the purposes of the trust are better served without diversifying." *Id.* § 633A.4303.

The specific asset Carl argues he was permitted to retain was stock in a family-owned business, Park Investment. However, the business closed in 1989, and the shares were written off as having no value shortly thereafter. Thus, any argument for retention of that asset was moot after the shares were written off. Not only were the closely-held assets no longer held in the trust, they no longer existed. The record before us shows that Carl took a number of liberties with trust assets. He engaged in risky day trading, at times buying and selling the entire value of accounts multiple times in a single month. Carl failed to diversify the investments and provided no explanation, other than insisting he was experienced and had special knowledge of the market. On our de novo review of the record, we agree with the district court that the trust invoked the Uniform Prudent Investor Act and Carl breached the Act.

D.    Damages

Carl argues the district court erred in calculating damages.[7]  This case was tried in equity and our review on appeal is de novo.  Iowa R. App. P. 6.907.  Carl argues any claim for damages prior to 1991 is speculative due to the lack of records.  MaryBeth argues error is not preserved regarding the argument for speculative damages.

MaryBeth's trust management expert testified that he was unable to review any statements regarding the assets of the trust prior to 1991 because the records do not exist.  Carl retained an expert witness to testify in rebuttal to MaryBeth's trust management expert.  Carl's expert attacked the reports of MaryBeth's witnesses because they used historical mutual fund performance and market data to discuss prudent investment strategies and predict the asset growth that would have occurred.[8]  When the parties reviewed Carl's expert report with the court to determine which parts would be contested for entry into the record, Carl's counsel agreed to strike most of a paragraph entitled "Speculation on the Value of Resulting Trust."  The only sentence retained related to an unstated growth rate of 37% that, following the removal of the rest of the paragraph, modified the disputed value of the initial trust assets.  Carl's counsel then raised the argument regarding speculation in his post-trial proposed findings of fact and conclusions of law.

---

[7] Carl also argues he is entitled to relief due to the doctrine of laches.  "It definitely follows that if the action is not barred by the statute of limitations no condition of laches can be reasonably claimed."  *Pap v. Pap*, 73 N.W.2d 742, 749 (Iowa 1955).  Following our statute-of-limitations findings above, this argument fails.

[8] Carl's expert also attacked other aspects of the reports.  However, his testimony revealed that his copies of the reports were incomplete, omitting columns related to the very criticisms he made.  The district court chose to give that testimony little weight because of the omissions.

We reiterate the requirement that issues be both raised and ruled on to preserve an issue for appellate review. *Meier*, 641 N.W.2d at 537. However, because Carl's counsel agreed to omit his expert's discussion of speculation, it would seem that the testimony that was somewhat similarly targeted was waived. The issue was then not fully raised until after trial was completed, in Carl's proposed findings. The district court found MaryBeth's expert reports showed "the most reasonable depictions of lost growth for the Investment Account and the Bonne's land sale proceeds" because no records were produced from 1977 through 1990. Issues raised after trial are generally not preserved for review. *Field v. Palmer*, 592 N.W.2d 347, 531 (Iowa 1999). Because Carl's counsel approached the issue when examining witnesses and the district court appeared to consider speculation, we will address the issue, assuming without deciding that error has been preserved.

Carl argues, in addition to speculation prior to 1991, that the damage award was miscalculated because of the lack of records showing mismanagement prior to 1991 and the post-1991 account records are incomplete. The lack of complete records from years prior to 1991 does not prevent a court from considering the relevant and admissible evidence actually presented. The district court considered the testimony and reports of both experts to the extent they were credible. Those records proved that damage occurred and created a reasonable basis for an award. *Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011). Furthermore, the records that do exist for the years prior to 1991 show Carl made distributions to people other than MaryBeth, including himself. In an effort to minimize any speculation, the reports provided by MaryBeth's expert did not make any loss

projections for years prior to 1991. That distinction is important because by that time, all closely-held assets were gone. The only assets left were publicly traded. Carl engaged in risky trading practices and at times completely withdrew from the market. He also transferred money between investment accounts and was unable to account for losses that occurred. Our de novo review of the record reveals that MaryBeth met her burden to prove "a reasonable basis from which the amount" of damages was approximated by the district court. *St. Malachy Roman Cath. Congregation of Geneso v. Ingram*, 841 N.W.2d 338, 352 (Iowa 2013).

E.     Attorney Fees

Carl argues the district court erred in awarding attorney fees to MaryBeth. Our review is for abuse of discretion. *In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013). We ask if a trial court "ruling is based on grounds that are unreasonable or untenable." *Id.* The Iowa Trust Code provides a statutory right to request attorney fees. Iowa Code § 633A.4507. "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." *Id.*

Carl raised only two arguments. First, that a majority of MaryBeth's claims were dismissed and those that were tried should be reversed on appeal, and second, that the trust code does not apply and the fees are not awardable. Both arguments fail based on our discussion of the claims above. The district court considered all of the factors listed in *Trimble* and discussed the particular reasons

for awarding fees to MaryBeth. 826 N.W.2d at 492–94. Finding nothing clearly unreasonable or untenable, we affirm the award. *See id.* at 482.

F.    Cross-Appeal

MaryBeth cross-appeals, arguing she should have been awarded attorney fees incurred for intervening in the dissolution proceedings and that she was entitled to double and punitive damages from the instant case. We review attorney fees for abuse of discretion. *Id.* We review punitive damage awards for correction of errors at law. *Papillon v. Jones*, 892 N.W.2d 763, 769–70 (Iowa 2017).

It does not appear that MaryBeth requested attorney fees resulting from the intervention from the dissolution court. MaryBeth requested but was denied attorney fees on appeal from the dissolution. The district court denied recovery of the fees because no authority was presented to support the award but noted Carl's awareness for the entirety of the proceeding that the MEM Trust was not then or ever considered marital property. The Trust Code contains a statutory right to request an award of attorney fees. Iowa Code § 633A.4507. MaryBeth claimed her rights pursuant to the Trust Code to intervene in the dissolution proceedings. We have already discussed it would have been inappropriate for MaryBeth to bring these claims within her intervention in the dissolution proceedings, but we acknowledge that her intervention in the dissolution was necessary to bring these claims because the property would have otherwise been considered marital property and distributed. Carl relies on a prior opinion of this court regarding a similar fact pattern, in which a parent attempted to invalidate a trust created for beneficiary children. *Skye v. Mathew Tr.*, No. 19-0546, 2019 WL 6358196, at *1 (Iowa Ct. App. Nov. 27, 2019). In *Skye*, the trust action was instigated by the

parent and there is no discussion whether the beneficiaries sought attorney fees related to the parents' dissolution. *Id.* Finding no authority to support an award of attorney fees following this procedural path, we must decline MaryBeth's request.

MaryBeth requested double and punitive damages based on her claims for breach of trust. The Trust Code provides, "A person who, in bad faith, wrongfully takes, conceals, or disposes of trust property is liable for twice the value of the property, attorney fees, court costs, and where consistent with exiting law, punitive damages, recoverable in an action by a trustee for the benefit of the trust." Iowa Code § 633A.4605. The district court declined to award double and punitive damages because the statute would award them only where "recoverable *in an action by a trustee* for the benefit of the trust." *Id.* (emphasis added). We find no authority allowing the statutory award of double and punitive damages in an action brought by a beneficiary of a trust. Accordingly, we must decline MaryBeth's request for such damages.

## III.    Conclusion

Our review of the record reveals that MaryBeth's claims flowing from her right as a beneficiary to the MEM Trust, an express trust created in 1977, are governed by the Iowa Trust Code and were properly tried to the bench. MaryBeth presented sufficient evidence supporting her requested use of offensive issue preclusion, leaving no remaining genuine issues of material fact. We concur with the district court's partial summary judgment. Carl raised several issues related to his motions for summary judgment but failed to prove he was entitled to judgment as a matter of law. The trust declaration executed in 1977 specifically invoked the statutory precursors to both the prudent person standard and the Uniform Prudent

Investor Act. Our de novo review confirms that Carl breached his duties in failing to diversify the investments. MaryBeth met her burden to prove a reasonable basis for her damages. We find nothing clearly untenable or unreasonable in the district court's attorney-fee award to MaryBeth. Finding no supporting authority for the award of dissolution attorney fees or double and punitive damages, MaryBeth's requests fail.

**AFFIRMED.**