25CA0835 Peo in Interest of AE 01-08-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0835
Mesa County District Court No. 23JV53
Honorable JenniLynn E. Lawrence, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Ap.E and Ar.E, Children,

And Concerning V.A.,

Appellant,

and

A.E.,

Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

Donald L. Steerman, County Attorney, Meeker, Colorado, for Appellee

Cassandra L. Coleman, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

Ainsley Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee

¶ 1    In this dependency and neglect action, V.A. (mother) appeals the judgment allocating parental responsibilities for Ap.E. and Ar.E. (the children) to K.E. (the paternal grandmother).  We affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services (the Department) received a referral when mother was arrested, leaving two-year-old Ap.E. and eleven-month-old Ar.E. without a caregiver. The Department filed a petition in dependency and neglect, raising concerns about mother's incarceration, criminal activity, domestic violence, mental health, neglect, and substance dependence.

¶ 3    A jury determined that the children lacked proper parental care as a result of mother's actions or failures to act and that they were in an environment injurious to their welfare as a result of mother's acts or omissions.  The juvenile court adjudicated the children dependent and neglected and adopted treatment plans for both parents.  After adjudication, mother elected to proceed pro se, assisted by court-appointed advisory counsel.

¶ 4    The Department and guardian ad litem (GAL) later moved to allocate parental responsibilities to the paternal grandmother, who had served as the children's placement provider since their removal

from mother.  Father joined the Department and GAL's motion and submitted a proposed parenting plan allocating sole decision-making to the paternal grandmother.

¶ 5     Almost two years after the petition was filed, and after a contested hearing, the juvenile court entered an allocation of parental responsibilities (APR) and closed the dependency and neglect action.

¶ 6     Mother appeals, claiming that the court erred by (1) determining that the Department made reasonable efforts because it declined to provide her with reasonable accommodations, (2) releasing one of the Department's witnesses before mother could cross-examine her, and (3) finding that she was not a fit parent.  We consider and reject these claims in turn.

II.     Mother Abandoned Her Request for ADA Accommodations

¶ 7     Mother first claims that her due process rights were violated when the juvenile court denied her motion for accommodations under the Americans with Disabilities Act (ADA).  We conclude that mother abandoned her claim and therefore do not review it.

¶ 8     The ADA was enacted to ensure "equality of opportunity" and "full participation" of individuals with disabilities.  *People in Interest*

*of T.B.*, 12 P.3d 1221, 1223 (Colo. App. 2000). Specifically, it provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. *People in Interest of C.Z.*, 2015 COA 87, ¶ 11. The juvenile court qualifies as a public entity under the ADA.

¶ 9 "[A] 'disability' under the ADA requires more than a diagnosis of mental or physical impairment" and "a plaintiff must ultimately prove either an actual or perceived substantial limitation in a major life activity to prevail on a claim under the ADA." *Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1239-40 (D. Colo. 2009).[1] Whether a parent qualifies as an individual with a disability under the ADA is determined on a case-by-case basis. *See Colo. State Bd. of Dental Exam'rs v. Major*, 996 P.2d 246, 249 (Colo. App. 1999).

---

[1] Mother cites the ADA as the basis for her challenge to the APR judgment. Though she has not brought an independent claim asserting that a public entity violated the ADA, we nevertheless refer to caselaw enforcing the ADA for general guidance on how a juvenile court may address such issues that arise in the context of a dependency and neglect action.

3

¶ 10    Around one year after adjudication, mother moved for reasonable accommodations under the ADA. Mother asserted that she suffered from post-traumatic stress disorder and asked the court to provide "flexibility in the timing of . . . court hearings" and allow "for accommodations such as extensions if necessary" to meet filing deadlines.

¶ 11    The juvenile court found that, based on mother's notice, it could not determine whether she had a qualifying disability under the ADA. The court provided mother with the judicial district's "ADA Request Form" and encouraged her to complete it, noting that, "with additional information, there may be a determination that [mother] has a qualifying disability." In doing so, the court reserved ruling on whether mother was a qualified individual with a disability.

¶ 12    However, our review of the record reveals that mother did not file a completed form or otherwise provide the court with the additional requested information needed to make a determination. And because mother did not secure a ruling, we conclude she abandoned her ADA challenge and will not review it on appeal. "When a party raises an issue in the district court, but the court

4

doesn't rule on it, the defendant must ask the district court to rule on it to preserve it for appeal. If the defendant doesn't do that, we deem the issue abandoned and won't address it." *People v. Stewart*, 2017 COA 99, ¶ 55 (J. Jones, specially concurring). Even when a party makes "occasional objections," divisions of this court have deemed their appellate claims abandoned when they do not request rulings from the trial court. *See Vanderpool v. Loftness*, 2012 COA 115, ¶¶ 27-28.

### III. Court Did Not Err in Addressing Mother's Requests Outside of ADA

¶ 13    Despite mother's failure to provide the additional information requested, the juvenile court nevertheless addressed mother's specific requests for latitude in the court proceedings "irrespective of any qualifying disability." It found that mother's request for flexible timing for hearings was not reasonable, reasoning that while it would consider mother's input when scheduling a hearing, "once a hearing is scheduled, it is expected that the parties will participate in a hearing. If the party or parties do not appear, it will be the conclusion that they have decided not to participate, unless something is provided to the contrary."

¶ 14    The court further explained that mother's request for flexibility in meeting filing deadlines was unnecessary because any party could request additional time.  The court encouraged mother to reach out to her advisory counsel for assistance in filing such requests.

¶ 15    During the APR hearing, mother asked the court to "allow [her] some extra time to gather" her thoughts if she was experiencing PTSD symptoms.  The court granted this request without making any disability finding, advising mother "at any time . . . if you feel like you need a break, if you feel like you need some time to get your thoughts gathered . . . as I do with all participants in these proceedings, anytime anyone needs a break, we're happy to take one."  We discern no error in these rulings.

¶ 16    Separate from her request for accommodations from the juvenile court, mother also requested accommodations from the Department.  Mother contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her because there was no evidence that the Department provided her with accommodations.  In other words, mother claims that the Department's efforts could have been reasonable only if they were

accompanied by the accommodations she requested.  We are not persuaded.

¶ 17     A juvenile court is required to consider the Department's reasonable efforts when it enters an APR to a nonparent.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 20.  And though the Department must reasonably accommodate a parent who is a qualified individual with a disability under the ADA, *People in Interest of S.K.*, 2019 COA 36, ¶¶ 25, 34; *see* 42 U.S.C. § 12102 (defining "disability" under the ADA); *see also* 42 U.S.C. § 12131(2) (defining "qualified individual" under the ADA), as discussed above, mother abandoned her request for the court to make the necessary determination.

¶ 18     We recognize that mother eventually provided the court with a copy of a letter purporting to be a disability determination notice from the State of Colorado.  After a lengthy discussion at the APR hearing, the juvenile court found that the letter demonstrated that mother "ha[s] a disability such that [she is] eligible for Health First Colorado Benefits. . . That's as much information as I could take judicial notice of."  But the court's judicial notice of the letter was insufficient to establish mother's disability status under the ADA.

7

*See RHJ Medical Center, Inc. v. City of DuBois*, 754 F.Supp.2d 723, 752 (W.D.Pa. 2010) ("A record identifying a person as disabled for some other purpose — like a receipt of social security benefits — may not necessarily establish the fact that the person has a record of being disabled under the ADA"). We therefore discern no error in the court's determination that the letter submitted by mother did not satisfy the court's earlier request for the information necessary to make its own determination.

¶ 19 We further reject mother's assertion on appeal that she did not need to prove she was a qualified individual with a disability because the Department "regarded [her] as having" an impairment that substantially limited one or more major life activities. Mother cites the Code of Federal Regulations for the proposition that the ADA applies, but fails to explain why the Department, as a public entity, is not exempt from providing accommodations when her disability status is only established through the "regarded as" prong of the definition. 28 C.F.R. § 35.130(b)(7)(ii) ("A public entity is not required to provide a reasonable modification to an individual who meets the definition of "disability" solely under the "regarded as" prong of the definition of "disability" at § 35.108(a)(1)(iii).").

¶ 20    In any event, mother has identified only two specific requests in support of her challenge to the Department's reasonable efforts, neither of which is availing.  True, early in the case, the court granted mother's request to include life skills services on her treatment plan.  But the court did so because there was no objection to adding the service, and without determining whether the service was necessary as a reasonable accommodation under the ADA.  And though we do not read mother's brief as challenging the Department's compliance with the court's order to provide life skills services, we nevertheless conclude that the court's finding that the Department made life skills services available to mother is supported by the record.

¶ 21    And to the extent mother's brief can be read as challenging the juvenile court's ultimate reasonable efforts determination *independent of* her ADA accommodations, her argument consists of a single conclusory statement and therefore is not properly before us.  *People in Interest of R.J.B.*, 2021 COA 4, ¶ 35 (we will not consider a claim which is "merely a bald assertion without argument or development").

## IV. Release of Department's Expert Witness Before Mother's Cross-Examination

¶ 22    Mother next contends that the juvenile court violated her due process rights by dismissing a witness at the APR hearing before mother was able to cross-examine her.

¶ 23    Procedural due process requires notice of the proceeding and a meaningful opportunity to be heard. *People in Interest of M.M.,* 726 P.2d 1108, 1115 (Colo. 1986). A parent may not obtain relief on a due process claim absent a showing of harm or prejudice. *See People in Interest of J.A.S.,* 160 P.3d 257, 262 (Colo. App. 2007).

### A. Additional Background

¶ 24    At the APR hearing the Department's first witness was an evaluator who completed a "parenting capacity interactional evaluation" with mother and the children. The Department and other parties completed direct and cross-examination before the court adjourned for lunch. The court noted that mother would have "the opportunity to cross when we come back from lunch if she chooses to." The court confirmed that all parties could return by 1:15 p.m., and hearing no objection, recessed.

¶ 25    The court reconvened on the record at 1:25 p.m.  Mother had not yet appeared.  The court found that, "in light of [mother] not timely returning from our lunch break, . . . she has waived her right to cross examine the witness . . . .  [W]e have released [the witness] and are proceeding ahead" with the Department's next witness.

¶ 26    Mother appeared while the next witness was being offered as an expert and objected to the matter proceeding without her being able to cross-examine the evaluator.

### B.    Analysis

¶ 27    Mother claims that she was denied the right to be heard when the juvenile court dismissed the evaluator and "denied [her] the right to cross-examine the [D]epartment's" witness.  We reject mother's contention for three reasons.

¶ 28    First, we are not aware of any cases, and mother provides none, that support her claim that she had the right to cross-examine this witness.  *See People in Interest of G.E.S.*, 2016 COA 183, ¶ 50 (the confrontation clause of the Sixth Amendment does not extend to dependency and neglect cases).

¶ 29    Second, mother's claim that the juvenile court did not provide her with adequate notice that the witness would be dismissed if she

11

did not return on time is belied by the record. When it denied her request for "flexibility in the timing of . . . court hearings" six months before the APR hearing, the court notified mother that if she did not appear at a scheduled hearing, "it will be the conclusion that [she] ha[s] decided not to participate, unless something is provided to the contrary." Before breaking for lunch on the first day of the APR hearing, the court noted that mother would be given the opportunity to cross-examine the evaluator "if she chooses to." The court's finding that mother chose not to timely return from lunch, absent any communication from her indicating otherwise, followed the procedures established by the juvenile court.

¶ 30    Third, mother fails to establish that she was prejudiced by the release of the witness when mother did not timely return from lunch. During her case-in-chief, mother recalled two of the Department's witnesses: the paternal grandmother and the ongoing caseworker. Mother did not attempt to recall the evaluator and does not assert that she would not have been permitted to do so by the juvenile. Nor does the record suggest that holding the hearing in mother's absence impaired the basic fairness of the hearing. Mother does not explain what information her cross-examination

would have elicited that would have substantially influenced the outcome of the case. *See People in Interest of C.C.*, 2022 COA 81, ¶ 20 (an error is harmless unless "it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself").

¶ 31    To the extent that mother claims the court's dismissal of this witness impacted her rights under the ADA, we already determined above that she abandoned her ADA claims.

## V.    Fitness

¶ 32    Last, mother contends that she was a fit parent because she had substantially complied with the treatment plan at the time of the APR hearing.

¶ 33    Mother acknowledges that the court was not required to enter a fitness finding as part of its APR order. *See* § 19-3-507(1)(a), C.R.S. 2025; *see also People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011) (APR must be determined in accordance with a child's best interests; parental unfitness is not required for an APR for a child adjudicated dependent or neglected). However, because we agree that the court relied on its finding that mother was not fit as the compelling reason why it was not in the children's best

interests to return to mother's care, we consider mother's challenge to the factual findings underlying its fitness determination.

¶ 34    Partial or even substantial compliance with a treatment plan "may not be sufficient to correct or improve the parent's conduct or condition." *People in Interest of A.J.*, 143 P.3d 1143, 1151 (Colo. App. 2006).  However, the court found that the uncontested evidence at the APR hearing demonstrated that mother had not demonstrated compliance with her treatment plan.  The court found that mother was "committed to resisting efforts to comply with her treatment plan" and "has not successfully completed her treatment plan nor has she addressed the issues that led to the [Department]'s involvement."  The court found that mother "remains an unfit parent.  [Her] conduct is not likely [to] change within a reasonable time."

¶ 35    The record supports these findings.  The caseworker testified that mother attended family time "pretty consistently," but that unhealthy dynamics between mother and the children and unsafe situations during family time persisted.  Outside of family time, mother "hasn't really engaged in this case or in the services."  Mother completed capacity to parent and domestic violence victim

14

assessments but did not follow through with the recommendations. Mother continued to engage in criminal activity and had five open warrants at the time of the hearing. And she refused to participate in a substance dependence class or engage in substance testing.

¶ 36 The caseworker's uncontested testimony was that mother "had two years to engage fully in services to become a safe and appropriate parent and she simply has chosen not to." As a result, the caseworker opined that "the same reasons of concern that led to the Department getting involved with this family again are still very present concerns," including mother's criminal activity, mental health, substance dependence, and lack of appropriate caregiving for the children.

¶ 37 Given this evidence, we conclude that the record supports the court's finding that mother was not a fit parent.

## VI. Disposition

¶ 38 The judgment is affirmed.

JUDGE FREYRE and JUDGE YUN concur.